**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OPINIONLAB, INC., | ) | Case No. 1:13-cv-01574 |
| | ) | |
| Plaintiff, | ) | (consolidated with Civil Action No. 12-cv- |
| | ) | 5662 for pretrial purposes) |
| vs. | ) | |
| | ) | Hon. Judge Harry D. Leinenweber |
| QUALTRICS LABS, INC., | ) | Hon. Magistrate Judge Jeffrey Cole |
| QUALTRICS, LLC, | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |
| | ) | |
| QUALTRICS LABS, INC., | ) | |
| QUALTRICS, LLC, | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| OPINIONLAB, INC., | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**UNOPPOSED QUALTRICS' RENEWED MOTION
TO STAY PENDING *INTER PARTES* REVIEW**

Defendants Qualtrics Labs, Inc. and Qualtrics, LLC, (collectively "Qualtrics") respectfully renew their motion (DE #91–92) to stay this litigation pending the resolution of *inter partes* review ("IPR") of U.S. Patent Nos. 6,606,581, 7,085,820, 7,370,285, 8,024,668, and 8,041,805 by the United States Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB"). OpinionLab, Inc. ("OpinionLab"), through its counsel, has advised Qualtrics that it does not oppose this renewed motion.[1] In support of this motion, Qualtrics states as follows:

---

[1] While OpinionLab does not agree with certain of Qualtrics' arguments as stated in this motion or the memorandum that Qualtrics submitted in support of its initial motion, OpinionLab none-

1.      On February 7, 2014, Qualtrics filed a motion to stay this patent infringement action immediately after filing IPR petitions on all six of the patents asserted by OpinionLab, Inc. ("OpinionLab"). DE #91–92. While the Court denied that motion without prejudice (DE #94), during the hearing on the motion, the Court said Qualtrics could refile its motion and the Court would grant the stay "if the patent office grants the review [of] at least a significant portion of the case." Exhibit A (Transcript of Feb. 18, 2014 Proceedings) at 6:7–8.

2.      On July 31, 2014, the PTAB granted review on five of the six petitions filed by Qualtrics, instituting IPRs for all asserted claims of five of the six asserted patents. *See* Exhibit B (PTAB Decisions Instituting IPRs).  Given the institution of those five petitions, Qualtrics respectfully requests that the Court act as it suggested during the February 18, 2014 hearing and stay the case pending the completion of the IPR process.

3.      The grounds for this motion are in large part set forth in the memorandum that Qualtrics submitted in support of its initial motion.  In support of this renewed motion, Qualtrics highlights the more significant points that weigh in favor of a stay:

- Although several months have passed since Qualtrics filed the original motion, the state of discovery is essentially the same. Consistent with the Court's instructions to "table" potentially duplicative discovery (Exhibit A (Transcript of Feb. 18, 2014 Proceedings) at 6:9-11), the parties have not produced any more documents, taken or scheduled depositions, or filed any substantive motions. While the parties have exchanged claim construction terms and constructions as required by the Local Patent Rules, the parties have not started claim construction

---

theless does not oppose the relief requested, *i.e.*, that the litigation be stayed pending resolution of the five IPRs that were permitted to proceed.

briefing. In fact, staying the case now would obviate the time and expense of claim construction at least until the PTAB completes the IPR process.

- Now that the PTAB instituted IPRs on five of the six asserted patents, the PTAB's final decisions may simplify, if not eliminate, the vast majority of the case. If it were to invalidate all of the instituted claims, the Court would consequently dismiss the infringement claims for five of the six patents. Even if the PTAB only invalidated or narrowed a few claims, the time and expense of further discovery, claim construction, motions, and trial will likely be significantly reduced.

- Qualtrics does not seek an open-ended stay. The five IPR proceedings have the same schedule and will be concluded by the PTAB within 12 months (which may be extended six months for cause). *See* Exhibit C (Scheduling Order). A stay until the five IPR proceedings are resolved will avoid the substantial possibility that the Court and parties will waste valuable resources litigating claims that are cancelled or amended through the IPR.

- A stay will not unduly prejudice OpinionLab. Because OpinionLab's counsel has advised Qualtrics it does not oppose the motion, the proposed stay necessarily will not prejudice OpinionLab.

WHEREFORE, for the reasons set forth above and in Qualtrics original motion, Qualtrics respectfully requests the Court stay this case pending resolution of the IPRs.

Dated:  August 5, 2014                                  Respectfully submitted,

                                                        */s/ Bob Steinberg*
                                                        Bob Steinberg
                                                        LATHAM & WATKINS LLP
                                                        355 South Grand Avenue
                                                        Los Angeles, CA 90071
                                                        Telephone: (213) 891-8989

bob.steinberg@lw.com

*Attorneys for Defendants Qualtrics Labs,*
*Inc. and Qualtrics, LLC*

# <u>INDEX OF EXHIBITS</u>

**Exhibit A:** Transcript of Proceedings – Motion dated February 18, 2014

**Exhibit B:** IPR Decisions:
Cases: IPR2014-00356 (Patent 6,606,581 B1)
      IPR2014-00406 (Patent 7,085,820 B1)
      IPR2014-00420 (Patent 7,370,285 B1)
      IPR2014-00421 (Patent 8,024,668 B2)
      IPR2014-00366 (Patent 8,041,805 B1)


**Exhibit C:** Scheduling Order:
Cases: IPR2014-00356 (Patent 6,606,581 B1)
      IPR2014-00366 (Patent 8,041,805 B1)
      IPR2014-00406 (Patent 7,085,820 B1)
      IPR2014-00420 (Patent 7,370,285 B1)
      IPR2014-00421 (Patent 8,024,668 B2)

# EXHIBIT A

```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION

 3    OPINION LAB, INC.,                )
                                        )
 4              Plaintiff,              )
                                        )
 5              v.                      )  No. 13 CV 1574
                                        )
 6    QUALTRICS LABS, INC.,             )  Chicago, Illinois
                                        )  February 18, 2014
 7              Defendant.              )  9:30 a.m.

 8                 TRANSCRIPT OF PROCEEDINGS - MOTION

 9             BEFORE THE HONORABLE HARRY D. LEINENWEBER

10    APPEARANCES:

11    For the Plaintiff:        PAUL HASTINGS, LLP
                                BY:  MR. CHRISTOPHER W. KENNERLY
12                              1117 South California Avenue
                                Palo Alto, California 94304
13                              (650) 320-1808
                                chriskennerly@paulhastings.com
14
                                PAUL HASTINGS, LLP
15                              BY:  MS. EMILY N. DILLINGHAM
                                191 North Wacker Drive, Suite 1300
16                              Chicago, Illinois 60606
                                (312) 499-6292
17                              emilydillingham@paulhastings.com

18    For Defendant Qualtrics:  LATHAM & WATKINS, LLP
                                BY:  MR. MATTHEW W. WALCH
19                              233 South Wacker Drive, Suite 5800
                                Chicago, Illinois 60606
20                              (312) 876-7700
                                matthew.walch@lw.com
21
22    For Defendant             WINSTON & STRAWN, LLP
      iPerceptions, Inc.:       BY:  MS. KATHERINE E. ROHLF
23                              35 West Wacker Drive
                                Chicago, Illinois 60601
24                              (312) 558-3209
                                krohlf@winston.com
25
```

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith_Walsh@ilnd.uscourts.gov

1    (Proceedings heard in open court:)

2         THE CLERK:  13 C 1574, Opinion Lab versus Qualtrics.

3    Someone called and indicated that they were running late.

4         MR. KENNERLY:  It wasn't me.

5         THE CLERK:  It wasn't you.  We may have to re-call

6    it.  Go ahead.

7         MS. DILLINGHAM:  I'm Emily Dillingham.  I'm also with

8    Opinion Lab.

9         THE CLERK:  Did you want to wait?

10         MS. DILLINGHAM:  Matt Walch from Latham will be a few

11    minutes late.  His train was canceled.

12    (Recess.)

13         THE CLERK:  13 C 1574, Opinion Lab versus Qualtrics.

14         MR. KENNERLY:  Your Honor, Chris Kennerly and Emily

15    Dillingham for plaintiff, OpinionLab.

16         MR. WALCH:  Good morning, your Honor.  Matt Walch on

17    behalf of Qualtrics.  I apologize, your Honor, for being late

18    again.  Not a fun commute in.

19         THE COURT:  It didn't bother me.  It may have

20    bothered them, but not me.

21         MR. WALCH:  I apologize to counsel as well.

22         THE COURT:  Let's see.  This is a motion for stay

23    pending review; is that correct?

24         MS. ROHLF:  Yes, your Honor.  And my name is

25    Katherine Rohlf.  And I'm here on behalf of iPerceptions in

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith Walsh@ilnd.uscourts.gov

1       the case that was consolidated with this one.

2               THE COURT:  Is there objection to it?

3               MS. ROHLF:  No, your Honor.  We filed our own motion

4       to stay as well.

5               THE COURT:  So the motion to stay is granted.

6               MR. KENNERLY:  Okay.  Plaintiff opposes that.

7               THE COURT:  Oh, I was going to say, is there

8       objection to the motion?

9               MR. KENNERLY:  Oh, I'm sorry.  I thought you meant

10      from defendant.  Plaintiff opposes the motion.  We basically

11      find it premature.  None of these requests for review at the

12      patent office have been granted.  That decision won't be made

13      for several months.

14              In addition, there are additional arguments that will

15      not be resolved in those reviews, additional claims against at

16      least iPerceptions that will not be resolved.  So we don't

17      think that a stay is appropriate.  And there's very likely to

18      be little, if any, streamlining of the case depending on the

19      outcome of those reviews.

20              THE COURT:  What is the status of the review, of the

21      petitions for review?

22              MR. WALCH:  All six of the petitions were filed

23      within the last month or so.  So all six of the patents that

24      are issued in the case are now subject to this petition for

25      review that has been submitted to the patent office.

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith_Walsh@ilnd.uscourts.gov

1          THE COURT:  When will there be a decision made on

2    that?

3          MR. WALCH:  As Mr. Kennerly said, there's going to be

4    a decision made on the petition.  If any of these petitions

5    are granted, then there's a possibility that the patents will

6    be either limited or eliminated entirely such that the case

7    will be moot.  So it's obviously efficient for the Court to

8    stay the action subject to the -- subject to the party --

9          THE COURT:  It's my understanding, I'm not an

10   authority on patent law, you people are, that the filing of a

11   petition basically is a request for the patent office to

12   review the patents to see if there's some basis for modifying

13   them or causing them to be rejected, correct?

14         MR. WALCH:  Correct.

15         THE COURT:  And if they grant the review, then that

16   means that they think that there's significant question and

17   then they proceed to determine; is that correct?

18         MR. WALCH:  That's correct.

19         MR. KENNERLY:  The standard is there's some

20   reasonable likelihood of a, you know, effective challenge.

21         THE COURT:  It seems to me it is premature until

22   they've made that decision.

23         MR. WALCH:  Well, your Honor, we proceed with this

24   case while this is still pending before the IPR process, then

25   we're wasting time because the patent office will weigh in.

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith Walsh@ilnd.uscourts.gov

1    And if they deny it, then we can proceed.

2         It's not going to have any interference with the case

3    because the case is in a very early stage.  It's better to

4    hear what the patent office says before we waste judicial

5    resources and time of the parties on discovery in this case

6    when it could be handled much more efficiently.

7         THE COURT:  Except that two statuses, one is, if they

8    reject the review, request for review, then the case proceeds

9    as before, correct?

10        MR. KENNERLY:  Right.  Your Honor, and there's six

11   petitions filed, six patents in the case.  So essentially for

12   the patent issues to be resolved as a function of these

13   reviews, all six petitions would need to be granted and all

14   six patents would need to be invalidated.  The likelihood of

15   that is very, very low.

16        Plus there are additional nonpatent claims against

17   iPerceptions and additional invalidity arguments that are not

18   subject to -- so this case is going to go forward regardless.

19        MR. WALCH:  First of all, your Honor, there is --

20   that's not true.  Not all six patent petitions, IPRs need to

21   be granted for there to be an impact on this case.  Just one

22   petition is granted, one limitation, discovery on the patent

23   could have a significant impact on this case.

24        So the most efficient process is for us to go through

25   this IPR with respect to these six patents, find out what the

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith Walsh@ilnd.uscourts.gov

1   Patent and Trademark Office does, go through the process of

2   discovery which again will be duplicative of what happens

3   here.  So we go through that process through the patent office

4   and then proceed here if we have to.

5              THE COURT:  Here is what I would suggest you do.

6   That is, since there are other issues involved that you take

7   the time -- now, I would grant the stay if the patent office

8   grants the review, at least a significant portion of the case.

9              I would suggest that you table your discovery until

10  we decide what -- until we determine what the patent office is

11  going to do with the idea that they may grant it and proceed

12  on the issues that might not be affected.

13             MR. WALCH:  And just to be clear from Qualtrics's

14  perspective, that's all the issues in the case.  There are no

15  other claims other than the six patents affecting us.  So all

16  it would be in the case is in the IPR process right now.

17             MR. KENNERLY:  And I think your Honor seized upon it

18  early on.  If and when the patent office grants the reviews

19  that have been requested on all the patents or a significant

20  number of them, you know, that may be a different situation.

21  But right now none of them have been granted, and the motion

22  is premature at this time.

23             THE COURT:  So you anticipate a decision within two

24  months?

25             MR. KENNERLY:  It may be longer than that.  I think

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith_Walsh@ilnd.uscourts.gov

1    Opinion Lab's initial response is due in a month or so, and

2    then the patent office will rule within another month or so.

3    It may be two or three months.

4           MR. WALCH:  Right.  And your Honor, that does create

5    the potential for duplicative discovery and inefficient

6    process if we --

7           THE COURT:  Well --

8           MR. WALCH:  -- engage in that discovery.

9           THE COURT:  -- I would suggest that you work together

10   to try to make it as efficient as possible.  I'm not going to

11   grant the motion to stay at this point but without prejudice,

12   obviously, to consider it once the patent office has rendered

13   a decision.  So you suggest a status in three months?

14          MR. WALCH:  Okay.

15          MR. KENNERLY:  Yes, your Honor.  Thank you.

16          THE COURT:  Three months.

17          THE CLERK:  May 21 at 9:00.

18          THE COURT:  But I would suggest you cooperate in, you

19   know, limiting discovery.  Don't go whole hog in the interim,

20   but I'd hate to see three months wasted.

21          MR. KENNERLY:  Understood, your Honor.  Thank you.

22          THE COURT:  All right.  Thank you.

23          MS. DILLINGHAM:  Thank you, your Honor.

24    (Proceedings adjourned at 9:55 a.m.)

25

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith_Walsh@ilnd.uscourts.gov

```
 1                 C E R T I F I C A T E

 2         I, Judith A. Walsh, do hereby certify that the

 3    foregoing is a complete, true, and accurate transcript of the

 4    proceedings had in the above-entitled case before the

 5    Honorable HARRY D. LEINENWEBER, one of the judges of said

 6    Court, at Chicago, Illinois, on February 18, 2014.

 7

 8    /s/ Judith A. Walsh, CSR, RDR, CRR          February 24, 2014

 9    Official Court Reporter

10    United States District Court

11    Northern District of Illinois

12    Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Judith A. Walsh, CSR, RDR, CRR
Official Court Reporter
219 South Dearborn Street, Room 1944
Chicago, Illinois 60604
(312) 702-8865
Judith_Walsh@ilnd.uscourts.gov

# EXHIBIT B

Trials@uspto.gov                                                        Paper 16
571-272-7822                                              Entered:  July 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
————————

QUALTRICS, LLC,
Petitioner,

v.

OPINIONLAB, INC.,
Patent Owner.
————————

Case IPR2014-00356
Patent 6,606,581 B1

————————

Before RAMA G. ELLURU, JEREMY M. PLENZLER, GEORGIANNA W.
BRADEN, and CARL M. DEFRANCO, *Administrative Patent Judges*.

DEFRANCO, *Administrative Patent Judge*.


DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00356
Patent 6,606,581 B1

# I. INTRODUCTION

Qualtrics, LLC, filed a Petition requesting an *inter partes* review of claims 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 of U.S. Patent No. 6,606,581 B1 ("the '581 patent"). Paper 1 ("Pet."). Patent Owner, OpinionLab, Inc., filed a Preliminary Response. Paper 13 ("Prelim. Resp."). We have jurisdiction under 35 U.S.C. § 314(a), which provides that an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

After considering the Petition and Preliminary Response, we determine that Qualtrics has established a reasonable likelihood of prevailing on the claims challenged in the Petition. Accordingly, we institute an *inter partes* review of claims 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 of the '581 patent.

# II. BACKGROUND

A.      *'581 Patent*[1]

The '581 patent is directed to a system and method for measuring and reporting a user's reaction, i.e., feedback, to a particular web page of a website. Ex. 1001, 1:23-25. Typical commercial websites measure a user's reaction to the website *as a whole*. *Id.* at 1:43-58. In contrast, the claimed invention collects and reports user feedback on a *page-specific* basis by incorporating a "user reaction measurement tool" into each web page of the website. *Id*. at 11:48-55. Appearing within a user's browser window is a "viewable icon" that solicits a user's subjective reaction about the particular web page. *Id*. at 11:55-58. When the user selects the icon with a mouse pointer, a multi-level rating scale becomes viewable

---

[1] Qualtrics indicates that the '581 patent is the subject of co-pending cases in the U.S. District Court for the Northern District of Illinois, captioned *OpinionLab, Inc. v. Qualtrics Labs, Inc.*, 1:13-cv-01574; and *OpinionLab, Inc. v. iPerceptions Inc.*, 1:12-cv-05662. Pet. 2.

IPR2014-00356
Patent 6,606,581 B1

within the browser window. *Id.* at 12:30-35. The rating scale (60), which includes five rating levels ranging from very positive (++) to very negative (--), permits the user to rate his/her reaction to a particular web page by moving the mouse pointer over a desired rating and clicking the mouse button. *Id.* at 12:36-46.

Software associated with the icon operates to collect and store the user's reaction in a database for subsequent reporting to a website owner. *Id.* at 2:7-14. A website owner can generate a report for analyzing user reaction and feedback related to particular web pages of the website. *Id*. at 16:36–21:54, Figs. 8A, 8B, 9. The report allows the website owner to assess the success of each web page in the eyes of the user community. *Id.* at 13:39-42.

B.    *Illustrative Claim*

Of the challenged claims, claims 1 and 19 are independent. Claim 1 is illustrative of the claimed invention and recites:

> 1. A system for measuring page-specific user feedback concerning each of a plurality of particular web pages of a website, the system comprising:
>
> an icon viewable on each of the plurality of particular web pages of the website independent of input from a user subsequent to the user accessing the particular web page, the icon soliciting page-specific user feedback concerning a particular web page from the user independent of input from the user subsequent to the user accessing the particular web page, the icon appearing identically and behaving consistently on each of the plurality of particular web pages; and
>
> software associated with the icon and operable to receive the page-specific user feedback concerning the particular web page for reporting to a website owner, the page-specific user feedback comprising one or more page-specific subjective ratings of the particular web page as a whole and one or more associated page-specific open-ended comments concerning the particular web page,
>
> the page-specific user feedback allowing the website owner to access page-specific subjective user ratings and associated page-

3

IPR2014-00356
Patent 6,606,581 B1

>specific open-ended comments across the plurality of particular web
>pages of the website to identify one or more particular web pages of
>the website for which the page-specific user feedback is notable
>relative to page-specific user feedback for other particular web pages
>of the website.

Ex. 1001, 25:43-26:2.  Independent claim 19 recites limitations similar to those of claim 1, except that it covers a method, rather than a system, for measuring page-specific user feedback.  *Id*. at 27:32-58.

C.   *Evidence of Record*

Qualtrics relies upon the following prior art as the basis for its assertion against the challenged claims of the '581 patent.[2]

| References | Patents/Printed Publications | Date | Exhibit |
|---|---|---|---|
| CustomerSat | *Customer Satisfaction Measurement, Surveys and Market Research by CustomerSat.com, The Internet Survey Experts*, https://web.archive.org/web/19980526190826/http://www.Customersat.com/ (retrieved Nov. 21, 2013 from Internet Archive, Wayback Machine), 1-76. | May 26, 1998 | 1003 |
| Medinets | DAVID MEDINETS, PERL5 BY EXAMPLE: THE EASIEST WAY TO LEARN HOW TO PROGRAM, Que Corp., 1-66. | 1996 | 1004 |
| HTML Spec | World Wide Web Consortium (W3C), *HTML 4.0 Specification*, Dave Raggett *et al*. (eds.), 1-366. | Apr. 24, 1998 | 1014 |

D.   *Asserted Grounds of Unpatentability*

Qualtrics asserts the following grounds in challenging the patentability of claims 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 of the '581 patent.  Pet. 3.

---

[2] Qualtrics also proffers the Declaration of John Chisholm, who founded the online survey research company that Qualtrics alleges as having published the CustomerSat reference.  Ex. 1005 ¶¶ 13, 27.

IPR2014-00356
Patent 6,606,581 B1

| Statutory Ground | Basis | Challenged Claims |
|---|---|---|
| § 102 | CustomerSat | 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 |
| § 103 | CustomerSat and Medinets | 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 |
| § 103 | CustomerSat, Medinets, and HTML Spec | 13 and 31 |

## III.  ANALYSIS

*A.    Claim Construction*

In an *inter partes* review, claim terms are given their broadest reasonable interpretation in light of the specification in which they appear and the understanding of one skilled in the relevant art.  *See* 37 C.F.R. § 42.100(b).  With that standard in mind, we have considered the claim terms the parties identify for interpretation.[3]  *See* Pet. 6-14; Prelim. Resp. 18.  At this stage of the proceeding, we determine that no particular claim terms require an express construction.

*B.    Asserted Grounds of Obviousness*

Qualtrics challenges claims 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 on the basis that the claimed invention would have been obvious over the combined teachings of CustomerSat and Medinets.  Pet. 3, 32-43.  As an additional basis for challenging claims 13 and 31, Qualtrics relies on the HTML Spec in combination with CustomerSat and Medinets.  *Id*. at 43-45.  OpinionLab, in turn, disputes Qualtrics's grounds of obviousness by focusing our attention on two limitations of the challenged claims: first, using an icon for "*solicit[ing] page-specific user feedback* concerning a particular web page," and second, using software associated with the icon for "*reporting* to a website owner" the page-specific feedback in a

---

[3] We note that, for purposes of this proceeding, OpinionLab does not dispute the constructions proposed by Qualtrics.  Prelim. Resp. 18.

IPR2014-00356
Patent 6,606,581 B1

manner that allows the owner to access and identify feedback for a particular web page that "is notable *relative to* page-specific user feedback for other particular web pages." *See* Ex. 1001, 25:43-26:2 (emphasis added). Both of the challenged independent claims, namely, claims 1 and 19, recite these two limitations.

1. *Soliciting Page-Specific User Feedback*

At the outset, we note CustomerSat and Medinets each teach an icon for soliciting page-specific user feedback. For example, CustomerSat teaches the use of a "Pop!Up" icon on each web page for inviting a user to take a survey. Ex. 1003 at 7 ("Feedback on different sections of your Web site can be gathered by using Pop!Up on multiple pages of the site."); *see also id.* at 8 ("What is the URL of the exact page of your web site on which you would like survey invitations to popup?"). Similarly, Medinets teaches placing, at the bottom of each web page, a "Send a comment to the webmaster" icon, which summons a "Web Page" feedback form when a user clicks on the icon. Ex. 1004 at 60-62; *see also id.* at 60 ("a user feedback form appears that automatically knows which page the user was on when the button was pressed"), at 61 ("a feedback form on-the-fly . . . will be customized to each Web page"). Based on these teachings, we are persuaded Qualtrics has demonstrated a reasonable likelihood that CustomerSat and Medinets, either alone or in combination, satisfy the "soliciting" feature of the claimed invention.

2. *Reporting Page-Specific User Feedback and Identifying Web Pages for Which User Feedback Is Notable Relative to Other Web Pages*

OpinionLab argues repeatedly that we should decline institution because, although CustomerSat and Medinets may "in cursory fashion" mention a reporting feature, neither reference teaches "comparing the page-specific feedback across web pages to identify feedback for one particular web page that is notable relative to others." Prelim. Resp. 36; *see also id.* at 27, 32, 35. We are not persuaded.

IPR2014-00356
Patent 6,606,581 B1

Rather, based on the current record, we determine Qualtrics has shown a reasonable likelihood that the combination of CustomerSat and Medinets evinces the "reporting" feature of the claimed invention.

Specifically, Medinets's guide to "Perl" software includes a chapter on creating reports that display the data collected from a "Web page" feedback form. Ex. 1004 at 29, 60. According to Medinets, the Perl software "stores the feedback information into a database" and allows the webmaster "to track the comments and see which web pages generate the most feedback." Ex. 1004 at 64. Using the Perl software, the webmaster can create basic reports (*id.* at 29-50) or generate more detail-oriented reports that display various statistics and tables (*id.* at 57-59). *See also* Ex. 1005 ¶ 183. But, although we are persuaded that the Perl software is able to report user feedback on a page-specific basis, we are less convinced of its ability to analyze such feedback "relative to" other webpages, as required by independent claims 1 and 19.

Even so, Medinets notifies webmasters of the existence of alternative software programs for performing further analysis of data resulting from user feedback. *See, e.g.,* Ex. 1004 at 65 ("There is no need for you to create Perl scripts to do all of the analyzing. Some programmers have already done this type of work and many of them have made their programs available on the Web for little or no cost"). Given Medinets's directive that webmasters faced with creating web-page surveys look not only at Perl but also other software programs for analyzing page-specific feedback, we are persuaded that a skilled artisan would have been led to enhance Medinets's capability of performing page-specific analysis, by seeking to identify how such analysis may be notable relative to other webpages. *See* Pet. 41 (citing Ex. 1005 ¶ 188).

IPR2014-00356
Patent 6,606,581 B1

In particular, CustomerSat teaches several ways of analyzing survey responses, including "Segmentation," "Cross-tabs," and "Correlations." Ex. 1003 at 7, 25-26, 36; s*ee also* Ex. 1005 ¶¶ 184-186. CustomerSat describes segmentation as "examin[ing] results for subsets of respondents," cross-tabs as "provid[ing] a systematic tabulation and display of results by respondent segment for all choices of all questions of interest," and correlations as "identify[ing] which attributes are potentially the strongest drivers of overall satisfaction [and] which attributes are most strongly correlated with each other." Ex. 1003 at 25-26. CustomerSat further explains that survey "[r]esults may be analyzed . . . by respondent sub-group or segment; by cross-tabulation" and that "[a]n important analysis is gauging the correlation between each attribute . . . to identify the attributes that most contribute (or detract from) overall customer satisfaction." *Id.* at 18. These teachings by CustomerSat amount to a way of tabbing and analyzing survey response data across web pages and comparing such data from one web page "relative to" other web pages. *See* Ex. 1005 ¶¶ 184-185.

Because CustomerSat and Medinets are similarly concerned with the analysis of website survey responses, and Medinets expressly directs webmasters faced with analysis of user response data to consider other software programs, we are persuaded that a skilled artisan would have been led to combine the teachings of CustomerSat and Medinets to create a report identifying web pages for which user responses are notable "relative to" other webpages. *See* Pet. 32-34, 41. In addition, we find that such a comparison likely would have been a matter of common sense. Thus, based on the current record, Qualtrics has sufficiently demonstrated that the combined teachings of CustomerSat and Medinets satisfy the "reporting" feature of the claimed invention.

IPR2014-00356
Patent 6,606,581 B1

> 3.  *Additional Limitations and Claims*

We find persuasive Qualtrics's summary (and claim chart) of how the
remaining limitations of claims 1 and 19 are taught by the combination of
CustomerSat and Medinets, and why a skilled artisan would have been led to arrive
at the claimed invention.  *See* Pet. 34-41, 46-57.  Also, we have considered
Qualtrics's challenge of dependent claims 2, 7, 8, 17, 20, 25, and 26.  *See id*. at 41-
43, 57-60.  OpinionLab does not argue these dependent claims separately from
independent claims 1 and 19, and we are persuaded that Qualtrics has shown
sufficiently that their limitations are taught by the combination of CustomerSat and
Medinets.  *See id*.

With respect to dependent claims 13 and 31, Qualtrics asserts two grounds
for obviousness of the claimed invention, one relying on CustomerSat and
Medinets and the other relying on the HTML Spec in combination with
CustomerSat and Medinets.  Pet. 42-45.  As for the first ground, we are not
persuaded by Qualtrics's assertion that CustomerSat teaches an icon that
"remain[s] viewable" regardless of user scrolling through the web page, as
required by claims 13 and 31.  *Id*. at 42-43.  Although Qualtrics contends that a
skilled artisan would have understood CustomerSat's "Feedback" and "Pop!Up"
icons as remaining stationary during user scrolling, Qualtrics's only evidence of
such an understanding is the statement by its declarant that CustomerSat's icon
"*could be configured* to remain stationary."  *Id*. at 42 (citing Ex. 1005 ¶ 195)
(emphasis added).  Speculation that something "could be configured" in the
manner of the claimed invention, without more, does not amount to a teaching that
it "would have been obvious" to do so.  *See* 35 U.S.C. § 103.

As for the second ground asserted against claims 13 and 31 (i.e.,
CustomerSat, Medinets, and the HTML Spec), Qualtrics points to the HTML Spec

IPR2014-00356
Patent 6,606,581 B1

as teaching "HTML frames" for controlling the display of web page elements during user scrolling. *Id*. at 43-45 (citing Ex. 1014 at 193). OpinionLab does not dispute Qualtrics's reliance on the HTML Spec as evidence of obviousness, except to argue that the HTML Spec does not cure the deficiencies with Qualtrics's ground relying on CustomerSat and Medinets. *See* Prelim. Resp. 40. Nor does OpinionLab dispute Qualtrics's assertion that a skilled artisan would have had reason to combine the teaching of the HTML Spec with those of CustomerSat and Medinets. S*ee id.* The burden, however, remains on Qualtrics. Because Qualtrics persuades us that the HTML Spec teaches keeping an icon viewable in a browser window as a user scrolls through a webpage, we determine that Qualtrics has demonstrated a reasonable likelihood that the combined teachings of CustomerSat, Medinets, and the HTML Spec would have rendered obvious the subject matter of challenged claims 13 and 31. *See* Pet. 43-45.

C.    *Asserted Ground of Anticipation*

We have considered Qualtrics's challenge of the claims on the basis of anticipation by CustomerSat, but find this ground unpersuasive. *See* Pet. 15-31. For example, although CustomerSat describes the reporting capability in terms of analyzing "segments" or "sub-groups" of feedback data, it does not mention that it can be done on a "page-specific" basis, as required by the claims. *See* Ex. 1003 at 25-26. While such a capability likely would have been obvious (as discussed above), anticipation requires identity. As such, we deny Qualtrics's challenge that CustomerSat anticipates the claimed invention.

## IV. CONCLUSION

Based on the arguments and evidence presented in the Petition, we conclude that Qualtrics has demonstrated a reasonable likelihood it will prevail in showing

IPR2014-00356
Patent 6,606,581 B1

obviousness of challenged claims 1, 2, 7, 8, 13, 17, 19, 20, 25, 26, and 31 of the '581 patent.

## V. ORDER

For the foregoing reasons, it is

ORDERED that, pursuant to 35 U.S.C. § 314(a), *inter partes* review of challenged claims 1, 2, 7, 8, 17, 19, 20, 25, and 26 of the '581 patent is hereby instituted on the asserted ground of obviousness over CustomerSat and Medinets, and *inter partes* review of challenged claims 13 and 31 is hereby instituted on the asserted ground of obviousness over CustomerSat, Medinets, and the HTML Spec;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, *inter partes* review of the '581 patent shall commence on the entry date of this Order, and notice is hereby given of the institution of a trial; and

FURTHER ORDERED that all other grounds presented in Qualtrics's Petition are *denied*, and no ground other than that specifically listed above is authorized for *inter partes* review of the '581 patent.

PETITIONER:

Robert Steinberg
Neil A. Rubin
LATHAM & WATKINS LLP
bob.steinberg@lw.com
neil.rubin@lw.com

PATENT OWNER:

Christopher W. Kennerly
Timothy P. Cremen
PAUL HASTINGS LLP
chriskennerly@paulhastings.com
timothycremen@paulhastings.com

11

Trials@uspto.gov                                    Paper 10
Tel: 571-272-7822                          Entered:  July 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

QUALTRICS, LLC,
Petitioner,

v.

OPINIONLAB, INC.,
Patent Owner.

_____

Case IPR2014-00406
Patent 7,085,820 B1

_____

Before RAMA G. ELLURU, JEREMY M. PLENZLER,
GEORGIANNA W. BRADEN, and CARL M. DEFRANCO, *Administrative
Patent Judges*.

PLENZLER, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00406
Patent 7,085,820 B1

## I.    INTRODUCTION

### A.  Background

Qualtrics, LLC ("Petitioner") filed a petition to institute an *inter partes* review of claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42 of U.S. Patent No. 7,085,820 B1 (Ex. 1001, "the '820 patent").  Paper 6 ("Pet.").  OpinionLab, Inc. ("Patent Owner") filed a preliminary response. Paper 9 ("Prelim. Resp.").  The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a), which provides as follows:

> THRESHOLD.—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

For the reasons given below, we institute an *inter partes* review of challenged claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42.

### B.  Asserted Grounds of Unpatentability and Evidence of Record

Petitioner contends that the challenged claims are unpatentable under 35 U.S.C. §§ 102 and 103 based on the following grounds (Pet. 3, 13-60).

| References | Basis | Claims challenged |
|---|---|---|
| CustomerSat[1] | § 102 | 1-8, 11, 15, 18, 20, 25-32, 35, 39, 42 |
| Medinets[2] | § 102 | 1, 2, 4, 5, 11, 15, 18, 20, 25, 26, 28, 29, 35, 39, 42 |
| CustomerSat and Medinets | § 103 | 1-8, 11, 15, 18, 20, 25-32, 35, 39, 42 |

---

[1] Internet Archive Wayback Machine, https://web.archive.org/web/19980526190826/http:/www.customersat.com/ (May 26, 1998) (Ex. 1003, "CustomerSat").
[2] David Medinets, PERL5 BY EXAMPLE (1996) (Ex. 1004, "Medinets").

IPR2014-00406
Patent 7,085,820 B1

Petitioner also provides testimony from John Chisholm ("the Chisholm Declaration"), who states that he has experience in electrical engineering and computer science, and also has reviewed the '820 patent and the prior art cited in the table above. Ex. 1005 ¶¶ 5, 6, 9. Mr. Chisholm is also the founder of the CustomerSat online research company (the research company associated with the CustomerSat reference). *Id.* ¶ 14.

### C. Real Party-in-Interest

Petitioner indicates that the Real Parties-in-Interest in this petition are Qualtrics, LLC and Qualtrics Labs, Inc. Pet. 2.

### D. Additional Proceedings

Petitioner indicates that the '820 patent is the subject of the following co-pending federal district court cases: *OpinionLab, Inc. v. Qualtrics Labs, Inc.*, 1:13-CV-01574 (N.D. Ill.); and *OpinionLab, Inc. v. iPerceptions Inc.*, 1:12-CV-05662 (N.D. Ill.). Pet. 2.

In addition to this petition, Petitioner has filed petitions challenging the patentability of certain claims of Patent Owner's U.S. Patent Nos. 6,421,724 (IPR2014-00314), 6,606,581 (IPR2014-00356), 8,041,805 (IPR2014-00366), 7,370,285 (IPR2014-00420), and 8,024,668 (IPR2014-00421).

IPR2014-00406
Patent 7,085,820 B1

### E. The '820 Patent

The '820 patent is titled "System and Method for Reporting to a Website Owner User Reactions to Particular Web Pages of a Website," and is directed to report generation for analysis of user feedback related to particular web pages of a website. Ex. 1001, 1:12-15. Figure 3 of the '820 patent, reproduced below, illustrates an exemplary web page including features for receiving user feedback concerning the webpage.



Figure 3 is an illustration of a web page including a multi-level subjective rating scale for user submission of a general reaction to the web page. In the example illustrated in Figure 3, rating scale 60 includes five rating levels, ranging from very positive (++) to very negative (--). *Id.* at 12:31-41.

After the user selects one of rating levels 62, the user reaction information is collected and stored in a database. *Id.* at 12:46-51. The '820 patent explains that the stored information concerning web page 28 may be provided to the website owner in the form of one or more suitable reports to allow the owner to assess the success of web page 28 in the eyes of the user community. *Id.* at 13:35-38. Figure 8A of the '820 patent, reproduced below, illustrates an exemplary report.

IPR2014-00406
Patent 7,085,820 B1



*FIG. 8A*

Figure 8A is an example report illustrating overall website ratings, as well as ratings for individual web pages of the website.

Table 102 from report 100 is directed to overall website ratings and includes timeframe 104 during which user reactions were collected, website overview 106 including total ratings, number of pages rated, and number of comments, and site detail 108 including a summary of evaluated elements of the website. *Id.* at 17:12-62.

Chart 124 from report 100 is directed to relative ratings among the various web pages of the website, and includes one line 126 for each web page 28 of the website. *Id.* at 17:63-65. The '820 patent explains that lengths 128 of lines 126 vary based on the total number of reviews received for corresponding web page 28. *Id.* at 17:66-18:1. Chart 124 includes regions for negative, neutral, and positive ratings, with the location of lines

5

IPR2014-00406
Patent 7,085,820 B1

126 corresponding to the rating for each particular webpage 28. *Id.* at 18:26-45.

As noted above, Petitioner challenges claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42. Claims 1 and 25 are independent, with claims 2-8, 11, 15, 18, and 20 depending from claim 1 and claims 26-32, 35, 39, and 42 depending from claim 25. Claim 1 illustrates the claimed subject matter and is reproduced below:

> 1. A system for reporting to a website owner page-specific subjective user reactions concerning each of a plurality of particular web pages of a website, comprising:
>
> a database containing page-specific subjective user reaction information for each of the plurality of particular web pages of the website, the page-specific subjective user reaction information for a particular web page reflecting page-specific subjective user reactions to the particular web page as a whole received from users that have accessed the particular web page; and
>
> a reporting module coupled to the database and operable to generate one or more reports using the page-specific subjective user reaction information for communication to the website owner, each report reflecting page-specific subjective user reactions across the plurality of particular web pages of the website and allowing the website owner to identify one or more particular web pages of the website for which the page-specific subjective user reactions are notable relative to page-specific subjective user reactions for other particular web pages of the website.

*Id.* at 25:39-59.

6

IPR2014-00406
Patent 7,085,820 B1

### F. *Claim Construction*

The Board interprets claims of an unexpired patent using the broadest reasonable construction in light of the specification of the patent. *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012); 37 C.F.R. § 42.100(b). Claim terms are given their ordinary and customary meaning, as would be understood by one of ordinary skill in the art in the context of the disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). An inventor may rebut that presumption by providing a definition of the term in the specification with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

Petitioner proposes a construction of several claim terms of the '820 patent (Pet. 6-12), and Patent Owner does not contend that any terms should be given a special meaning (Prelim. Resp. 16-17). We determine that the claim terms do not require express construction at this stage of the trial.

## II. DISCUSSION

### A. *Anticipation by CustomerSat*

Petitioner contends that claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42 are anticipated by CustomerSat. Pet. 3, 14-32, 46-60. We are not persuaded by Petitioner's contentions for the reasons discussed below.

#### 1. *Overview of CustomerSat*

CustomerSat includes excerpts from a website related to consumer surveying of website users. Ex. 1003, 3. CustomerSat describes an invitation system where website visitors are selected to participate in a survey reviewing the website, and explains that feedback of different

IPR2014-00406
Patent 7,085,820 B1

portions of the website can be gathered by including surveys on multiple pages of the website. *Id.* at 7. User responses are handled electronically and stored to a database. *Id.* at 16.

With respect to the subject matter of the surveys, CustomerSat explains that "[t]he most important question is one which asks for the customer's overall assessment" and "most commonly has five rating choices, but anywhere from three to eleven are possible." *Id.* at 20. Examples of the rating choices are "Excellent, Very Good, Good, Fair, Poor; and Very Satisfied, Satisfied, Neutral/No opinion/Neither Satisfied nor Dissatisfied, Dissatisfied, Very Dissatisfied." *Id.*

CustomerSat explains that survey "[r]esults may be analyzed by frequency distribution of responses for each question, by respondent sub-group or segment; by cross-tabulation; by difference between stated importance and rated performance (gap analysis); and in many other ways." *Id.* at 18 (emphasis omitted). Frequency distributions are described as being used to "examine the distribution of the full set of responses for each closed-end question among the question's choices." *Id.* at 25. CustomerSat describes segmentation as examining results for subsets of respondents, such as user demographics, and cross-tabs as "provid[ing] a systematic tabulation and display of results by respondent segment for all choices of all questions of interest." *Id.*

### 2. *Analysis*

Independent claim 1 recites "a reporting module . . . operable to generate one or more reports," and independent claim 25 recites "generating one or more reports." Both claim 1 and claim 25 recite "each report reflecting page-specific subjective user reactions across the plurality of

IPR2014-00406
Patent 7,085,820 B1

particular pages of the website." Petitioner's contentions are the same for claims 1 and 25. *See* Pet. 14-23, 32, 46-60. As noted above, we are not persuaded by Petitioner's argument.

Petitioner contends that a number of reports are provided in CustomerSat that are operable to display user reaction data including charts, tables, statistics, verbatim comments, cross-tabs, quadrant charts, and trend lines. Pet. 20-22 (citing Ex. 1003, 36). With respect to the "each report reflecting page-specific subjective user reactions across the plurality of particular pages of the website" limitations of claims 1 and 25, Petitioner contends that "CustomerSat specifically instructs that 'Results may be analyzed by . . . respondent sub-group or segment,'" and alleges that this includes results being analyzed "by web page." *Id.* at 22 (quoting Ex. 1003, 18). Petitioner contends that "CustomerSat further discloses several types of survey analyses and reports – including 'Segmentation' and 'Cross-tabs.'" *Id.* (citing Ex. 1003, 25). Petitioner further alleges that those reports "allow for the analysis of user reactions by (among other variables) web page, providing yet another way for the website owner to identify pages for which user reactions are 'notable' relative to others." *Id.*

Patent Owner responds that the reporting tools cited by Petitioner are simply a list of data analysis tools in CustomerSat and "[t]here is no disclosure [in CustomerSat] of any ability to generate reports reflecting *page-specific* feedback or to compare *feedback across particular web pages*." Prelim. Resp. 12, 26-27 (emphasis added).

We agree with Patent Owner. First, the cited portions of CustomerSat never refer to any form of analysis "reflecting page-specific subjective user reactions across the plurality of particular pages of the website," as required

IPR2014-00406
Patent 7,085,820 B1

by the claims. For example, CustomerSat's discussion of segmentation addresses "examin[ing] results for subsets of respondents," such as user demographics, including length of website usage or the rating assigned by the user. Ex. 1003, 25. Second, CustomerSat's discussion of cross-tabs also fails to address specifically feedback across web pages, explaining only that "[c]ross-tabs provide a systematic tabulation and display of results by respondent segment for all choices of all questions of interest." *Id.*

Petitioner additionally contends that the list of thirty-three websites ranked according to user preference in CustomerSat "provides another example of a report that allows website owners to identify particular web pages for which user reactions are notable relative to others." Pet. 23 (citing Ex. 1003, 33-34). Patent Owner responds that the ranked listing of websites does not involve *page-specific* user reactions for web pages of a website, and is, instead, "simply a list of user preferences regarding unrelated websites in response to a question." Prelim. Resp. 28. We agree with Patent Owner. Claims 1 and 25 require that *each* report reflects page-specific subjective user reactions across multiple pages of *a* website. The ranked listing of websites in CustomerSat is a listing of individual unrelated websites and does not include any detail reflecting page-specific subjective user reactions across multiple pages of *a* website. *See* Ex. 1003, 33-34. Therefore, we are not persuaded that CustomerSat discloses a "report reflecting page-specific subjective user reactions across the plurality of particular pages of the website" as required by the claims.

For the reasons set forth above, Petitioner has failed to establish a reasonable likelihood that it would prevail in challenging independent claims 1 and 25 as being anticipated by CustomerSat. For the same reasons,

IPR2014-00406
Patent 7,085,820 B1

Petitioner has failed to establish a reasonable likelihood that it would prevail in challenging dependent claims 2-8, 11, 15, 18, 20, 26-32, 35, 39, and 42 as anticipated by CustomerSat.

### B. Anticipation by Medinets

Petitioner contends that claims 1, 2, 4, 5, 11, 15, 18, 20, 25, 26, 28, 29, 35, 39, and 42 are anticipated by Medinets. Pet. 3, 32-41, 46-60. We are not persuaded by Petitioner's contentions for the reasons discussed below.

### 1. Overview of Medinets

Medinets is a manual for the Perl programming language. Ex. 1004, 1.[3] Medinets is directed to using Perl for common gateway interface (CGI) programming, which is described as "the standard programming interface between Web servers and external programs." *Id.* at 51. Medinets further explains that "Perl is the de facto standard for CGI programming." *Id.* at 52.

Medinets discusses general report generation features in Perl and provides an example report for displaying a CD collection including "the CD album's title, the artist's name, and the album's price." *Id.* at 29. Medinets provides an additional example that converts a report into a web page. *Id.* at 57. The example report displays statistics regarding specific documents accessed, such as documents that start with the letter "s." *Id.* at 57-60.

With respect to user feedback, Medinets notes that "[o]ne of the hallmarks of a professional Web site . . . is that every page has . . . a way to provide feedback," and provides an example web page comment form, shown in Figure 21.3, reproduced below. *Id.* at 60-64.

_____

[3] The cited page numbers for this exhibit are located at the bottom right of the exhibit.

IPR2014-00406
Patent 7,085,820 B1

**Figure 21.3**
A sample user
feedback form.



Figure 21.3 is an illustration of a web page comment form and includes the
recipient's e-mail address, a subject line, the sender's e-mail address, an
indication of urgency for reply (just FYI, please reply, reply urgently),
nature of the feedback (typo, bug, etc.), and a comment field.

Medinets explains that the system sends information from the
feedback form to the recipient's e-mail address. *Id.* at 64. Medinets,
however, specifies that the recipient will "need to perform further processing
in order to make use of the information." *Id.* Medinets further explains that
the website owner "might want to have the feedback submit button call a
second CGI script that stores the feedback information into a database"
which "will make it much easier for you to track the comments and see
which Web pages generate the most feedback." *Id.*

    *2. Analysis*

    As noted above, claims 1 and 25 require "each report reflecting page-
specific subjective user reactions across the plurality of particular web pages

IPR2014-00406
Patent 7,085,820 B1

of the website." Petitioner's contentions regarding claim 25 are the same as those for claim 1. *See* Pet. 32-37, 46-60. We are not persuaded by Petitioner's arguments.

Petitioner contends that "Medinets discloses storing the page-specific subjective use[r] reaction information in a database for analytical and reporting purposes." Pet. 36. In support of this contention, Petitioner cites the discussion of the feedback form features from page 494 of Medinets (Ex. 1004, 64), discussed above, and additionally notes that Medinets includes a chapter on creating basic reports with an example of generating a web-based report regarding usage statistics. *Id.* (citing Ex. 1004, 29-50, 57-59, 64). As for the "each report reflecting page-specific subjective user reactions across the plurality of particular web pages of the website" limitation of claims 1 and 25, Petitioner contends that "Medinets expressly discloses the analysis of user feedback by web page, allowing the website owner to identify one or more pages for which the page-specific user subjective user reactions are notable relative to others." *Id.* at 37 (quoting Ex. 1004, 64 ("The database will make it much easier for you to track the comments and see which web pages generate the most feedback.")).

Patent Owner responds that the feedback form features in Medinets are not a review and reporting tool as claimed because those features "do[] not allow for the generation of reports that reflect page-specific subjective user reactions concerning each of a plurality of particular web pages." Prelim. Resp. 30. Patent Owner contends that "[w]hile Medinets does in cursory fashion mention a collection database, it merely discloses the ability to identify which web pages generate the most user feedback, not comparing the page-specific subjective user reactions across web pages." *Id.*

13

IPR2014-00406
Patent 7,085,820 B1

We agree with Patent Owner.  The portions of Medinets cited by Petitioner discuss report generation generally and the benefits of using a database to store user feedback.  *See* Ex. 1004, 29-50, 57-59, 64.  Petitioner's quotation from Medinets on page 36 of the Petition, which is directed to feedback form information and the use of a database, omits the express disclosure in Medinets that "you need to perform further processing in order to make use of the information."  *Id.* at 64.  Petitioner has not pointed to sufficient disclosure in Medinets that specifically discloses the recited "report reflecting page-specific subjective user reactions across the plurality of particular pages of the website" limitation of claims 1 and 25.

For the reasons set forth above, Petitioner has failed to establish a reasonable likelihood that it would prevail in challenging independent claims 1 and 25 as being anticipated by Medinets.  For the same reasons, Petitioner has failed to establish a reasonable likelihood that it would prevail in challenging dependent claims 2, 4, 5, 11, 15, 18, 20, 26, 28, 29, 35, 39, and 42 as anticipated by Medinets.

### C. *Obviousness over CustomerSat and Medinets*

Petitioner contends that claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42 would have been obvious over CustomerSat and Medinets.  Pet. 3, 41-45.  We are persuaded by Petitioner's contentions on the present record.

#### 1. *Analysis*

Petitioner has shown sufficiently, for purposes of this decision, that the combination of CustomerSat and Medinets teaches or suggests each limitation of claims 1 and 25.  Specifically, Petitioner has shown sufficiently, for purposes of this decision, that the limitation of "each report reflecting page-specific subjective user reactions across the plurality of

particular web pages of the website" would have been obvious in view of the "web page identifiers explicitly disclosed in Medinets, (*e.g.*, Medinets, at 491 (61) ('Home Page'))" and "the variety of reports and analyses (*i.e.*, 'reporting module') disclosed in CustomerSat – including, *e.g.*, 'Segmentation' and 'Cross-tabs' reports – to analyze and report survey responses by web page." Pet. 44. With regard to a specific report format, Mr. Chisholm testifies that, based on the combined teachings of CustomerSat and Medinets, an example report of results across a plurality of web pages of a website would include a cross-tab report showing average user ratings for each page of a website. Ex. 1005 ¶ 208.

Patent Owner responds that the references, individually, "do[] not disclose reporting capabilities that reflect page-specific subjective user reactions and allow a website owner to identify subjective user reactions for one particular web page that is notable relative to others." Prelim. Resp. 34. As explained above, we agree that Petitioner has not shown sufficiently that the references, *individually*, disclose this limitation. The basis for this challenge, however, is the combined teachings of CustomerSat and Medinets. According to Petitioner, the limitation would have been obvious to one skilled in the art in view of the combined teachings of CustomerSat and Medinets.

We agree with Petitioner. Medinets explains that user survey feedback from individual web pages can be stored in a database and that further processing can be performed to make use of this information. Ex. 1004, 64. CustomerSat explains that "[c]ross-tabs provide a systematic tabulation and display of results by respondent segment for all choices of all questions of interest." Ex. 1003, 25. Therefore, we are persuaded that

IPR2014-00406
Patent 7,085,820 B1

Petitioner has shown sufficiently that, based on the combined teachings of CustomerSat and Medinets, one skilled in the art would have found it obvious to create a cross-tab report based on user feedback for individual web pages as suggested by the testimony of Mr. Chisholm discussed above. *See* Ex. 1005 ¶ 208.

Based on the record before us, Petitioner has shown sufficiently, for purposes of this decision, that the combination of CustomerSat and Medinets teaches, or renders obvious, all the limitations of claims 1 and 25. Patent Owner does not argue dependent claims 2-8, 11, 15, 18, 20, 26-32, 35, 39, and 42 separately. We have reviewed Petitioner's challenges to these claims (*see* Pet. 43-45) and are persuaded that Petitioner has shown sufficiently, for purposes of this decision, that the combination of CustomerSat and Medinets teach the limitations of these claims as well.

We are further persuaded that a skilled artisan would have had reason to combine the teachings of CustomerSat and Medinets. As Petitioner contends, a skilled artisan would have had reason to combine CustomerSat and Medinets because the references each address the same problem in the same manner, including solicitation of feedback from users of a web page through HTML forms, Common Gateway Interface (CGI) scripts, and databases. Pet. 41-42. Petitioner additionally contends that because the Perl programming language, which is the subject of Medinets, "was recognized as the 'de facto standard for CGI programming,' (Medinets, at 408 (52)), a [skilled artisan] would have had reason to consult Medinets to understand how to implement surveys on a page-by-page basis using (among other things) CGI scripts." Pet. 42 (quoting Ex. 1004, 52).

16

IPR2014-00406
Patent 7,085,820 B1

Patent Owner responds that it is insufficient to conclude that the references would have been combined because they are in the same technological field of feedback solicitation using HTML forms (Prelim. Resp. 35), but does not address Petitioner's reasoning based on the specific applicability of the Perl programming language to web survey forms as disclosed in Medinets (i.e., Perl is the "standard for CGI programming"). Based on the record before us, including the similar problems address by the references and the disclosure in Medinets that a person faced with creating web-based surveys would look to Perl, Petitioner has shown sufficiently, for purposes of this decision, that one skilled in the art would have had reason to combine the teachings of CustomerSat and Medinets.

Accordingly, we conclude that the information presented shows a reasonable likelihood that Petitioner would prevail in demonstrating that claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42 are unpatentable as obvious over the combination of CustomerSat and Medinets.

III.    SUMMARY

Petitioner has demonstrated that there is a reasonable likelihood of prevailing on its challenge to the patentability of claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42 of the '820 patent.  At this stage of the proceeding, the Board has not made a final determination as to the patentability of any challenged claim.

IV.    ORDER

For the reasons given, it is

17

IPR2014-00406
Patent 7,085,820 B1

ORDERED that an *inter partes* review is granted based on the following proposed ground:

Claims 1-8, 11, 15, 18, 20, 25-32, 35, 39, and 42 as unpatentable, pursuant to 35 U.S.C. § 103 over the combination of CustomerSat and Medinets.

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '820 patent is hereby *instituted* commencing on the entry date of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial.

FURTHER ORDERED that the trial is limited to the grounds identified above. No other grounds are authorized.

For PETITIONER:

Robert Steinberg
Neil A. Rubin
LATHAM & WATKINS LLP
bob.steinberg@lw.com
neil.rubin@lw.com

For PATENT OWNER:

Christopher W. Kennerly
Timothy P. Cremen
PAUL HASTINGS LLP
chriskennerly@paulhastings.com
timothycremen@paulhastings.com

Trials@uspto.gov                                                   Paper 7
Tel: 571-272-7822                                   Entered: July 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

QUALTRICS, LLC,
Petitioner,

v.

OPINIONLAB, INC.,
Patent Owner.
_____

Case IPR2014-00420
Patent 7,370,285
_____

Before RAMA G. ELLURU, JEREMY M. PLENZLER, GEORGIANNA
W. BRADEN, and CARL M. DEFRANCO, *Administrative Patent Judges*.

BRADEN, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00420
Patent 7,370,285

# I.     INTRODUCTION

## A.  Background

Qualtrics, LLC ("Petitioner") filed a Petition (Paper 1, "Pet.") to institute an *inter partes* review of claims 1, 4, 5, 7, 9, 12, 13, and 15 of U.S. Patent No. 7,370,285 B1 ("the '285 patent") pursuant to 35 U.S.C. § 311. OpinionLab, Inc. ("Patent Owner") filed a Preliminary Response (Paper 6, "Prelim. Resp."). We have jurisdiction under 35 U.S.C. § 314, which provides that an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

Upon consideration of the Petition and Patent Owner's Preliminary Response, we conclude that Petitioner has established a reasonable likelihood it would prevail with respect to at least one of the challenged claims. *Id*. Accordingly, for the reasons that follow, we institute an *inter partes* review of claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent.

## B.  Related Proceedings

Petitioner informs us of two federal district court cases relating to the '285 patent: *OpinionLab, Inc. v. Qualtrics Labs, Inc.*, 1:13-cv-01574 (N.D. Ill.) and *OpinionLab, Inc. v. iPerceptions Inc.*, 1:12-cv-05662 (N.D. Ill.). Pet. 2. In addition, Petitioner has filed several petitions requesting *inter partes* review of related patents. *Id*. These cases are: IPR 2014-00314 requesting review of U.S. Patent No. 6,421,724; IPR2014-00356 requesting review of U.S. Patent No. 6,606,581; IPR2014-00406 requesting review of U.S. Patent No. 7,085,820; and IPR2014-00366 requesting review of U.S. Patent No. 8,041,805. Petitioner filed IPR 2014-00421 requesting review of

IPR2014-00420
Patent 7,370,285

certain claims of U.S. Patent No. 8,024,668, which is a continuation of the
'285 patent. *Id.*

### C. The '285 Patent

The '285 patent relates to a method for receiving page-specific user
feedback concerning a web page of a website. Ex. 1001, Abstract. The
method includes using a comment icon viewable on the page to solicit from
a user one or more page-specific, open-ended comments concerning the
page. *Id.* The '285 patent Specification discloses several embodiments that,
for example, provide a user reaction measurement tool that is incorporated
into a particular web page of a website. *Id.* at col. 6, ll. 14-18; col. 14, ll. 56-
58. An example of a user reaction measurement tool is icon 50, shown in
Figure 2 reproduced below.



Figure 2 illustrates an embodiment of a user reaction measurement tool as
icon 50.

The icon has associated software components, so that when a user
clicks on the icon, a multi-level subjective rating scale becomes visible and
allows users to provide reactions to the web page. *Id.* at col. 15, ll. 30-36.
Figure 3, reproduced below, shows a multi-level subjective rating scale.

3

IPR2014-00420
Patent 7,370,285



Figure 3 illustrates a multi-level subjective rating scale as icon 60.

Certain embodiments present a user with a pop-up window when the user clicks a specific icon. Ex. 1001, col. 18, ll. 47-55. The pop-up window includes a field for the user to type in comments about a particular web page, as shown in Figure 6 reproduced below. *Id*. at col. 19, ll. 17-22.



Figure 6 illustrates a pop-up window with field 79 for type-written comment.

In one embodiment, the Specification teaches that the pop-up window is generated from a remote server separate from the server hosting the website rather than generating the window locally. *Id*. at col. 10, ll. 16-25.

4

IPR2014-00420
Patent 7,370,285

*D. Illustrative Claim*

As noted above, Petitioner challenges claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent, of which claims 1 and 9 are independent. Claim 1 is illustrative of the challenged claims and is reproduced below:

1.     A system for receiving page-specific user feedback concerning a particular web page of a website displayed at a computer system of a user that has accessed the particular web page, the system comprising:

a comment icon viewable on the particular web page and soliciting one or more page-specific open-ended comments concerning the particular web page from the user; and

software associated with the comment icon and operable to:

in response to the user selecting the comment icon, automatically communicate a request for a comment window to a remote computer system that is separate from a computer system hosting the website and also separate from the computer system of the user, the comment window allowing the user to provide the one or more page-specific open-ended comments concerning the particular web page;

receive, at the computer system of the user, the comment window from the remote computer system that is separate from the computer system hosting the website and also separate from the computer system of the user;

present the comment window to the user at the computer system of the user; and

receive the one or more or more page-specific open-ended comments concerning the particular web page from the user for reporting to a website owner, the one or more page-specific open-ended comments concerning the particular web page being provided using the comment window.

*E. The Evidence of Record*

Petitioner relies upon the following references, as well as the declaration of John Chisholm (Ex. 1009):

| Reference | Patent/Printed Publication | Date | Exhibit |
|---|---|---|---|
| McDonald | Michael J. McDonald et al., *Multimedia Feedback Systems for* | April 25, 1999 | 1005 |

IPR2014-00420
Patent 7,370,285

| Reference | Patent/Printed Publication | Date | Exhibit |
|---|---|---|---|
| | *Engineering*, Sandia National Laboratories | | |
| Pinsley | U.S. Patent No. 6,070,145 | May 30, 2000 | 1007 |
| OpinionLab Website | OpinionLab Website, http://web.archive.org/web/2001041 8152822/http://www.opinionlab.com | June 5, 2001 | 1008 |

*F. The Asserted Grounds of Unpatentability*

Petitioner challenges the patentability of claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent based on the following grounds:

| Reference(s) | Basis | Claim(s) challenged |
|---|---|---|
| McDonald | § 102 | 1, 4, 5, 7, 9, 12, 13, and 15 |
| McDonald and Pinsley | § 103(a) | 1, 4, 5, 7, 9, 12, 13, and 15 |
| Pinsley and OpinionLab Website | § 103(a) | 1, 4, 5, 7, 9, 12, 13, and 15 |
| McDonald and OpinionLab Website | § 103(a) | 1, 4, 5, 7, 9, 12, 13, and 15 |

## II.     DISCUSSION

*A. Claim Construction*

In an *inter partes* review, claim terms in an unexpired patent are interpreted according to their broadest reasonable construction in light of the Specification of the patent in which they appear. 37 C.F.R. § 42.100(b); *see also* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012). Claim terms are given their ordinary and customary meaning as would be understood by one of ordinary skill in the art in the context of the entire disclosure. *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007). Any special definition for a claim term must be set forth in the Specification with reasonable clarity, deliberateness, and precision. *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

For purposes of this decision and based on the record before us, we

need not provide express constructions at this stage of the proceeding.

### B. Asserted Anticipation of claims 1, 4, 5, 7, 9, 12, 13, and 15 by McDonald

Petitioner contends McDonald anticipates, under 35 U.S.C. § 102, claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent. Pet. 17-29. We determine Petitioner has not demonstrated a reasonable likelihood it would prevail in challenging those claims as anticipated by McDonald.

### 1. Overview of McDonald

McDonald discloses systems that allow users to provide typewritten comments about web pages, electronic documents, and videos. Ex. 1005, 5-6. McDonald specifically teaches software for implementing a web page commenting system that includes use of HTML and JavaScript. *Id*. at 1. McDonald states that the web page feedback system "allows people to make context-sensitive comments about specific web content" and "[t]he first system ties comments to specific web pages." *Id*. According to the disclosure in McDonald, the web page commenting feedback system "first appears to reviewers as a 'feedback' link on each important web page of a report. . . . This link has a similar function as typical 'mailto' links." *Id*. at 4.

McDonald further discloses that when the "feedback link" is opened on a web page, the system automatically fills a comment form with basic information on the "Make Comment Page." *Id*. Such information includes the URL of the page the user was viewing when he or she clicked the feedback link, the date, and the user's name and email address. *Id*. The reviewer then writes and submits his or her comments to a web server. *Id*. Figure 2 of McDonald, reproduced below, illustrates the basic process of submitting and viewing comments associated with an electronic document.

IPR2014-00420
Patent 7,370,285



Figure 2 illustrates the basic process of the commenting system of McDonald.

McDonald also discloses an embodiment of a feedback system that allows a user to comment on digital movies (i.e., a "digital movie commenting system"). Ex. 1005, 5-6. In that system, a "user clicks on a provide/review comments about movie link and is then brought to a movie commenting page" (i.e., "feedback link"). *Id*. at 6. McDonald teaches that the digital movies are stored on a web server. *Id*. A web page (HTML) loads a Java commenting applet. The Java commenting applet loads and plays the movie, provides user controls, and interacts with the remote database. *Id*. A Java server program (on the remote database) interacts with the commenting applet and retrieves and stores comment data on a network server. *Id*. at 6, Fig. 4. Figure 4 of McDonald, reproduced below, illustrates the architecture of the digital movie commenting system and identifies the interactions of the different elements of the system.

IPR2014-00420
Patent 7,370,285



Figure 4 illustrates the basic elements of the digital movie commenting system of McDonald.

## 2. *Analysis*

Petitioner contends McDonald, as summarized above, discloses each limitation of claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent. Independent claims 1 and 9 each require communicating a request for a "comment window" to and receiving a "comment window" from "a remote computer system that is separate from a computer system hosting the website and also separate from the computer system of the user." Thus, all the claims require three separate computer systems: (1) a remote computer system to which a request for a "comment window" is communicated and from which a "comment window" is received by the user computer; (2) a computer system that hosts the website for which a user provides comments; and (3) a user computer system.

According to Petitioner, Figure 4 of McDonald discloses three distinct and separate computer systems: "Web Content" that may be "served from any server" (the computer system at top-right of Figure 4); the user's computer receives the "Web Content" via a "Web Brower" (computer system at top left of Figure 4); and a "Web Database Server" that communicates with the user's Web Browser (computer system at bottom left

9

IPR2014-00420
Patent 7,370,285

of Figure 4). Pet. 19-20; *see also* Ex. 1009 ¶ 119. Petitioner concludes that, as shown in Figures 2 and 4, when the user clicks a "feedback link" on a web page, the feedback link is operable to communicate automatically an HTTP request for the "Make Comment Page" (i.e., the claimed "comment window") to a remote computer system. Pet. 22; *see also* Ex. 1009 ¶ 122.

Patent Owner disagrees with Petitioner's conclusion that McDonald teaches or suggests a request for a "comment window" that is communicated to and a "comment window" received from a "'remote computer system that is separate from a computer system hosting the website." Prelim. Resp. 26. According to Patent Owner, "McDonald merely discloses ***communication*** with a remote database, such as to submit comment information." *Id*. Patent Owner specifically explains that while McDonald's commenting applet, which generates the claimed "comment window," interacts with a remote database to store comments, "it is clear that the interaction is limited to transfer of comment data—not the applet itself." *Id*. at 13. In other words, according to Patent Owner, McDonald does not disclose that the applet is located on a remote server that is separate from the server hosting the website and the user system.

Petitioner's argument regarding Figure 4 of McDonald (Pet. 20) does not explain how McDonald's disclosure (Ex. 1005, 5) teaches or suggests that the "Make Comment Page" (i.e., the claimed "comment window") is located on a remote computer system that is separate from the server that hosts the website and the user computer system, as required by the challenged independent claims. Thus, we are not persuaded that McDonald discloses communicating a request for a "comment window" to and receiving a "comment window" from "a remote computer system that is

IPR2014-00420
Patent 7,370,285

separate from a computer system hosting the website and also separate from the computer system of the user," as required by independent claims 1 and 9.

Therefore, we conclude that Petitioner has not established a reasonable likelihood that it would prevail in showing that claims 1 and 9 are anticipated under 35 U.S.C. § 102 by McDonald. For the same reasons, we are not persuaded that Petitioner has established a reasonable likelihood it would prevail in showing anticipation of dependent claims 4, 5, 7, 12, 13, and 15.

### C. Asserted Obviousness of claims 1, 4, 5, 7, 9, 12, 13, and 15 by McDonald in view of Pinsley

Petitioner argues that the combination of McDonald and Pinsley renders each of claims 1, 4, 5, 7, 9, 12, 13, and 15 obvious. Pet. 29-36. We determine Petitioner has demonstrated a reasonable likelihood it would prevail in showing that those claims would have been obvious under 35 U.S.C. § 103 over the combined teachings of McDonald and Pinsley.

### 1. Overview of Pinsley

Pinsley describes methods for conducting surveys of website users. Ex. 1007, Abstract. Pinsley teaches an advertiser website that embeds into certain web page(s) on their website a GIF (graphic image format) icon that links to a recruit program located at a surveyor's site. *Id*. at col. 2, ll. 45-47; col. 3, ll. 9-16. Figure 1 of Pinsley, reproduced below, illustrates the different computer systems used by Pinsley's disclosed methods.

IPR2014-00420
Patent 7,370,285



Figure 1 illustrates the basic elements of Pinsley's survey system.

Pinsley teaches that survey program (element 9) is located on a computer network (surveyor's website 3) remote from the advertiser's website (element 1) and the user's computer system (elements 6 and 7). *Id.* at col. 5, ll. 10-12.

The surveyor site monitors how many times the advertiser's website is accessed by users. Ex. 1007, col. 2, ll. 47-54. A recruit program on the surveyor site selects users of the website to be presented with a banner on the advertiser's website. *Id.* The banner entices the user to participate in a survey about the advertiser's website. *Id.* When a user clicks on the banner, the program launches and presents the user with a survey, as shown in Figure 4 reproduced below. *Id.* at col. 2, ll. 51-56; Fig. 4.

IPR2014-00420
Patent 7,370,285



FIG. 4

Figure 4 illustrates a survey presented to users of an advertiser's website as disclosed in Pinsley's survey system.

After the survey is completed, the information is collected, processed and analyzed by the surveyor, and then the information is delivered to the advertiser or otherwise used. *Id.* at col. 3, ll. 5-8.

> ### 2. *Analysis*

We have reviewed Petitioner's arguments that each of claims 1, 4, 5, 7, 9, 12, 13, and 15 would have been rendered obvious by the combined teachings of McDonald and Pinsley, and Petitioner's supporting evidence. Pet. 29-36, 48-60. We are persuaded, based on the current record, that Petitioner has made a sufficient showing that the combination of McDonald and Pinsley teaches or suggests all the limitations of the challenged claims noted above. Patent Owner argues that the combination of McDonald and Pinsley does not teach or suggest several limitations of independent claims 1 and 9. We do not find Patent Owner's arguments persuasive on the present record, as discussed below.

13

IPR2014-00420
Patent 7,370,285

Patent Owner first contends that neither McDonald nor Pinsley teaches or suggests that a request for the "comment window" is communicated to and the "comment window" is received from a "remote computer system separate from a computer system hosting the website and also separate from the computer system of the user," as required by independent claims 1 and 9. Prelim. Resp. 43.

According to Patent Owner, "Pinsley is directed to a survey sampling program that decides whether to display an enticement banner to a user to complete a website survey, but is silent as to where or how the website survey page itself is hosted." *Id*. (citing Ex. 1007 at col. 2, ll. 26-60, and Figure 3). We agree with Petitioner, however, that Pinsley specifically discloses that survey program (element 9) is located on a computer network (surveyor's website 3) that is remote from the advertiser's website (element 1) and the user's computer systems (elements 6 and 7). Pet. 31-32 (citing Ex. 1007 at col. 5, ll. 10-12). Moreover, as Petitioner asserts, Pinsley teaches giving users an opportunity to access the survey by presenting a graphic icon to the user, and responding to the graphic icon causes the actual survey (i.e., the claimed "comment window") to be received from the surveyor's site (i.e., the claimed "remote computer system"). Ex. 1009 ¶ 123; Ex. 1007 col. 2, ll. 11-14.

Patent Owner further contends that neither McDonald nor Pinsley teaches or suggests soliciting one or more "page-specific" open-ended comments concerning a particular web page, as required by independent claims 1 and 9. Prelim. Resp. 45. According to Patent Owner, (1) McDonald fails to teach that limitation, because McDonald is directed to peer-review of multimedia files, *not particular web pages of a website*, and

14

IPR2014-00420
Patent 7,370,285

(2) Petitioner does not assert that Pinsley discloses that limitation, and therefore, Petitioner fails to meet its burden to show obviousness of the independent claims. *Id*. at 45-46. Petitioner, however, asserts that McDonald does teach that limitation. Specifically, Petitioner asserts that McDonald discloses that "[e]ach system allows people to make context-sensitive comments about specific web content. . . .The first system ties comments to *specific web pages*[.]" Pet. 18 (citing Ex. 1005 at 1) (emphasis added). McDonald further states that this "Web Page Commenting" system "interoperates with regular web pages to allow reviewers to comment on web page content." *Id.* (citing Ex. 1005 at 5). We are persuaded, based on the record before us, that McDonald teaches open-ended comments concerning a particular web page.

Patent Owner also contends that neither McDonald nor Pinsley teaches a "comment icon viewable on a particular web page" or the computer system of a user receiving the comment window from the remote computer. Prelim. Resp. 46-47. To the contrary, Petitioner asserts McDonald's "feedback link" corresponds to the claimed "comment icon." Pet. 18. McDonald's system displays a "feedback link" for users to click in order to submit comments regarding a particular web page. Ex. 1005, 5. When a user clicks the "feedback link," a 'make a comment' web form is displayed on the user's computer screen. Ex. 1005, 5; Ex. 1009 ¶ 120. According to Petitioner, the "make a comment web form" corresponds to the claimed "comment window." Pet. 19-21. We agree with Petitioner.

Patent Owner lastly contends that neither McDonald nor Pinsley teaches or suggests "reporting [feedback comments] to a website owner," as required by independent claims 1 and 9. Prelim. Resp. 47-48. Petitioner

15

IPR2014-00420
Patent 7,370,285

asserts, however, that McDonald teaches reporting user comments to a website owner through a Web-based "Report Page." Pet. 24 (citing Ex. 1005 at 5 and Fig. 2). Specifically, McDonald states website owners can submit search terms through a web form on the Report Query Page to generate custom reports of reviewer comments (Report Pages). These reports display the comments and provide hyperlinks to the Source Page to which the comment refers. Ex. 1005, 5. Based on the cited disclosure in McDonald, we are persuaded that McDonald teaches reporting feedback comments to a website owner.

Accordingly, based on the record before us currently, Petitioner has made a sufficient showing that the combination of McDonald and Pinsley teaches or suggests all the limitations of independent claims 1 and 9. While Patent Owner has not made any arguments specific to the dependent claims, we have reviewed Petitioner's arguments, and supporting evidence, with respect to dependent claims 4, 5, 7, 12, 13, and 15 (Pet. 48-60; Ex. 1009 ¶¶ 139-150), and we determine that Petitioner has made a sufficient showing that the combination of McDonald and Pinsley teaches or suggests the limitations of those claims as well. For example, dependent claim 4 calls for a system of claim 1, where "the comment window is customizable by the website owner without the website owner modifying the particular web page." McDonald specifically discloses the "Make a Comment" form is accessed through a "feedback link" on the particular web page (the "source page"), but the form itself is on a different web page (the "Make Comment Page"), which is hosted on a remote server. Ex. 1005 at 5, Fig. 2; Ex. 1009 ¶¶ 139-140. According to Petitioner, the website owner need not modify the particular web page in order to customize the comment window. Ex. 1009 ¶

16

IPR2014-00420
Patent 7,370,285

140. So long as the URL of the "Make Comment Page" remains the same, the (unmodified) link on the particular web page will still function to call the (modified) comment window. *Id*.

Moreover, we are persuaded by Petitioner's analysis, supported by Mr. Chisholm's opinion (Ex. 1009), that one of ordinary skill would have had reason to combine the teachings of McDonald and Pinsley. Pet. 29-31. According to Petitioner, a person of ordinary skill in the art would have looked to both McDonald and Pinsley, because the references address the same problem of soliciting feedback from users of a web page in the same way (by presenting users with a feedback icon that is clicked by the user to open a feedback window). *Id*. at 30. Additionally, we are persuaded by Petitioner's reasoning that a person of ordinary skill in the art would have had reason to modify the products of McDonald with that of Pinsley, because (1) hosting Web-based surveys (*e.g.*, "feedback windows") on a remote server was routine industry practice by 1997-98 (and beyond); (2) remote hosting offered a number of business, technical, and market research advantages, including, *e.g.*, avoiding security issues and other constraints associated with the server hosting the website, and reducing traffic on the website server; and (3) implementing a "feedback window" on a remote computer system was straightforward from a technical perspective, and could be accomplished simply by ensuring that the destination of the corresponding HTML link (appearing on the web page(s) for which feedback was being provided) was set to the address (URL) of the survey on the remote server. *Id*. at 30-31; Ex. 1009 ¶¶ 106-110.

Accordingly, we determine, based on the current record, that Petitioner has established a reasonable likelihood it would prevail in

17

IPR2014-00420
Patent 7,370,285

showing that claims 1, 4, 5, 7, 9, 12, 13, and 15 would have been obvious, under 35 U.S.C. § 103(a), over the combination of McDonald and Pinsley. Pet. 24-38.

### D. Additional Challenges

Petitioner additionally asserts that claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent are unpatentable under 35 U.S.C. § 103(a) over the combination of McDonald and OpinionLab Website (Pet. 36-46), and under 35 U.S.C. § 103(a) over the combination of Pinsley and OpinionLab Website (Pet. 36-46).

We do not authorize an *inter partes* review on these additional grounds directed to claims 1, 4, 5, 7, 9, 12, 13, and 15, as they are redundant in light of our determination that there is a reasonable likelihood that those challenged claims are unpatentable over the combination of McDonald and Pinsley.

## III.   CONCLUSION

For the foregoing reasons, we determine Petitioner has demonstrated there is a reasonable likelihood it would prevail in establishing the unpatentability of claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent.

At this stage of the proceeding, the Board has not made a final determination as to the patentability of any challenged claim.

IPR2014-00420
Patent 7,370,285

## IV.   ORDER

For the reasons given, it is

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review is hereby instituted as to claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent on the following asserted ground:

1.   Claims 1, 4, 5, 7, 9, 12, 13, and 15 under 35 U.S.C. § 103(a) as being rendered obvious over McDonald and Pinsley;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, *inter partes* review of the '285 patent shall commence on the entry date of this Order, and notice is hereby given of the institution of a trial; and

FURTHER ORDERED that no ground other than that specifically provided above is authorized for the *inter partes* review as to claims 1, 4, 5, 7, 9, 12, 13, and 15 of the '285 patent.

IPR2014-00420
Patent 7,370,285

PETITIONER:

Robert Steinberg
Neil A. Rubin
LATHAM & WATKINS LLP
bob.steinberg@lw.com
neil.rubin@lw.com

PATENT OWNER:

Christopher W. Kennerly
Timothy P. Cremen
PAUL HASTINGS LLP
chriskennerly@paulhastings.com
timothycremen@paulhastings.com

Trials@uspto.gov                                                    Paper 7
Tel: 571-272-7822                                         Entered: July 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

QUALTRICS, LLC,
Petitioner,

v.

OPINIONLAB, INC.,
Patent Owner.
_____

Case IPR2014-00421
Patent 8,024,668
_____

Before RAMA G. ELLURU, JEREMY M. PLENZLER, GEORGIANNA
W. BRADEN, and CARL M. DEFRANCO, *Administrative Patent Judges*.

BRADEN, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

IPR2014-00421
Patent 8,024,668

# I. INTRODUCTION

## A. Background

Qualtrics, LLC ("Petitioner") filed a Petition (Paper 1, "Pet.") to institute an *inter partes* review of claims 1, 4, 5, 7, 11, 14, 15, and 17 of U.S. Patent No. 8,024,668 B2 ("the '668 patent") pursuant to 35 U.S.C. § 311. OpinionLab, Inc. ("Patent Owner") filed a Preliminary Response (Paper 6, "Prelim. Resp."). We have jurisdiction under 35 U.S.C. § 314, which provides that an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

Upon consideration of the Petition and Patent Owner's Preliminary Response, we conclude that Petitioner has established a reasonable likelihood it would prevail with respect to at least one of the challenged claims. *Id*. Accordingly, for the reasons that follow, we institute an *inter partes* review of claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent.

## B. Related Proceedings

Petitioner informs us of two federal district court cases relating to the '668 patent: *OpinionLab, Inc. v. Qualtrics Labs, Inc.*, 1:13-cv-01574 (N.D. Ill.) and *OpinionLab, Inc. v. iPerceptions Inc.,* 1:12-cv-05662 (N.D. Ill.). Pet. 2. In addition, Petitioner has filed several petitions requesting *inter partes* review of related patents. *Id*. These cases are: IPR2014-00314 requesting review of U.S. Patent No. 6,421,724; IPR2014-00356 requesting review of U.S. Patent No. 6,606,581; IPR2014-00406 requesting review of U.S. Patent No. 7,085,820; and IPR2014-00366 requesting review of U.S. Patent No. 8,041,805. Petitioner filed IPR2014-00420 requesting review of

IPR2014-00421
Patent 8,024,668

certain claims of U.S. Patent No. 7,370,285, of which the '668 patent is a continuation.  *Id.*

### C. The '668 Patent

The '668 patent relates to a method for receiving page-specific user feedback concerning a particular web page of a website.  Ex. 1001, Abstract. The method includes using a comment icon viewable on the page to solicit from a user one or more page-specific, open-ended comments concerning the page.  *Id*.  The '668 patent Specification discloses several embodiments that, for example, provide a user reaction measurement tool that is incorporated into a particular web page of a website.  *Id*. at col. 6, ll. 14-18; col. 14, ll. 56-58.  An example of a user reaction measurement tool is icon 50, shown in Figure 2 reproduced below.



Figure 2 illustrates an embodiment of a user reaction measurement tool as icon 50.

The icon has associated software components, so that when a user clicks on the icon, a multi-level subjective rating scale becomes visible and allows users to provide reactions to the web page.  *Id*. at col. 15, ll. 30-36. Figure 3, reproduced below, shows a multi-level subjective rating scale.

IPR2014-00421
Patent 8,024,668



Figure 3 illustrates a multi-level subjective rating scale as icon 60.

Certain embodiments present a user with a pop-up window when the user clicks a specific icon. Ex. 1001, col. 18, ll. 47-55. The pop-up window includes a field for the user to type in comments about a particular web page, as shown in Figure 6 reproduced below. *Id*. at col. 19, ll. 17-22



Figure 6 illustrates a pop-up window with field 79 for type-written comment.

In one embodiment, the Specification teaches that the pop-up window is generated from a remote server separate from the server hosting the website rather than generating the window locally. *Id*. at col. 10, ll. 16-25.

IPR2014-00421
Patent 8,024,668

### D. Illustrative Claim

As noted above, Petitioner challenges claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent, of which claims 1 and 11 are independent. Claim 1 is illustrative of the challenged claims and is reproduced below:

1. One or more computer-readable non-transitory storage media embodying software operable when executed to:

use a feedback icon viewable on the particular web page to solicit page-specific feedback concerning a particular web page of a website from a user that has accessed the particular web page;

in response to the user selecting the feedback icon, automatically communicate a request for a feedback window to a remote computer system that is separate from a computer system hosting the website, the feedback window allowing the user to provide the page-specific feedback concerning the particular web page;

receive the feedback window from the remote computer system;

present the feedback window to the user; and

receive the page-specific feedback concerning the particular web page from the user for reporting to a website owner, the page-specific feedback concerning the particular web page being provided using the feedback window.

### E. The Evidence of Record

Petitioner relies upon the following references, as well as the declaration of John Chisholm (Ex. 1009):

| Reference | Patent/Printed Publication | Date | Exhibit |
|-----------|----------------------------|------|---------|
| McDonald | Michael J. McDonald et al., *Multimedia Feedback Systems for Engineering*, Sandia National Laboratories | April 25, 1999 | 1005 |
| Pinsley | U.S. Patent No. 6,070,145 | May 30, 2000 | 1007 |
| OpinionLab | OpinionLab Website, | June 5, | 1008 |

IPR2014-00421
Patent 8,024,668

| Reference | Patent/Printed Publication | Date | Exhibit |
|---|---|---|---|
| Website | http://web.archive.org/web/2001041 8152822/http://www.opinionlab.com | 2001 | |

*F. The Asserted Grounds of Unpatentability*

Petitioner challenges the patentability of claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent based on the following grounds:

| Reference(s) | Basis | Claim(s) challenged |
|---|---|---|
| McDonald | § 102 | 1, 4, 5, 7, 11, 14, 15, and 17 |
| McDonald and Pinsley | § 103(a) | 1, 4, 5, 7, 11, 14, 15, and 17 |
| Pinsley and OpinionLab Website | § 103(a) | 1, 4, 5, 7, 11, 14, 15, and 17 |
| McDonald and OpinionLab Website | § 103(a) | 1, 4, 5, 7, 11, 14, 15, and 17 |

II.    DISCUSSION

*A. Claim Construction*

In an *inter partes* review, claim terms in an unexpired patent are interpreted according to their broadest reasonable construction in light of the Specification of the patent in which they appear.  37 C.F.R. § 42.100(b); *see also* Office Patent Trial Practice Guide, 77 Fed. Reg. 48,756, 48,766 (Aug. 14, 2012).  Claim terms are given their ordinary and customary meaning as would be understood by one of ordinary skill in the art in the context of the entire disclosure.  *In re Translogic Tech., Inc.*, 504 F.3d 1249, 1257 (Fed. Cir. 2007).  Any special definition for a claim term must be set forth in the Specification with reasonable clarity, deliberateness, and precision.  *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994).

For purposes of this decision and based on the record before us, we need not provide express constructions at this stage of the proceeding.

IPR2014-00421
Patent 8,024,668

### B. *Asserted Anticipation of claims 1, 4, 5, 7, 11, 14, 15, and 17 by McDonald*

Petitioner contends McDonald anticipates, under 35 U.S.C. § 102, claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent. Pet. 17-29. We determine Petitioner has not demonstrated a reasonable likelihood that those claims are anticipated by McDonald.

#### 1. *Overview of McDonald*

McDonald discloses systems that allow users to provide typewritten feedback about web pages, electronic documents, and videos. Ex. 1005, 5-6. McDonald specifically teaches software for implementing a web page commenting system that includes use of HTML and JavaScript. *Id.* at 1. McDonald states that the web page feedback system "allows people to make context-sensitive comments about specific web content" and "[t]he first system ties comments to specific web pages." *Id.* According to the disclosure in McDonald, the web page commenting feedback system "first appears to reviewers as a 'feedback' link on each important web page of a report. . . . This link has a similar function as typical 'mailto' links." *Id.* at 3.

McDonald further discloses that when the "feedback link" is opened on a web page, basic information is filled automatically into a comment form on the "Make Comment Page." *Id.* Such information includes the URL of the page the reviewer was viewing when they clicked the feedback button, the date, and the reviewer's name and email address. *Id.* The reviewer then writes and submits his or her feedback to a web server. *Id.* Figure 2 of McDonald, reproduced below, illustrates the basic process of submitting and viewing comments associated with an electronic document.

IPR2014-00421
Patent 8,024,668



Figure 2 illustrates the basic process of the commenting system of McDonald.

McDonald also discloses an embodiment of a feedback system that allows user to comment on digital movies (i.e., a "digital movie commenting system"). Ex. 1005, 5-6. In that system, a "user clicks on a provide/review comments about movie link and is then brought to a movie commenting page" (i.e., "feedback link"). *Id*. at 6. McDonald teaches that the digital movies are stored on a web server. *Id*. A web page (HTML) loads a Java commenting applet. The Java commenting applet loads and plays the movie, provides user controls, and interacts with the remote database. *Id*. A Java server program (on the remote database) interacts with the commenting applet and retrieves and stores feedback data on a network server. *Id*. at 6, Fig. 4. Figure 4 of McDonald, reproduced below, illustrates the architecture of the digital movie commenting system and identifies the interactions of the different elements of the system.

IPR2014-00421
Patent 8,024,668



Figure 4 illustrates the basic elements of McDonald's digital movie
commenting system.

### 2. *Analysis*

Petitioner contends McDonald, as summarized above, discloses each
limitation of claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent.
Independent claims 1 and 11 each require communicating a request for a
"feedback window" to and receiving a "feedback window" from "a remote
computer system that is separate from a computer system hosting the
website and also separate from the computer system of the user." Thus, all
the claims require three separate computer systems: (1) a remote computer
system to which a request for a "feedback window" is communicated and
from which a "feedback window" is received by the user computer; (2) a
computer system that hosts the website for which a user provides comments;
and (3) a user computer system.

According to Petitioner, Figure 4 of McDonald discloses three distinct
and separate computer systems: "Web Content" that may be "served from
any server" (the computer system at top-right of Figure 4); the user's
computer receives the "Web Content" via a "Web Brower" (computer
system at top left of Figure 4); and a "Web Database Server" communicate

9

IPR2014-00421
Patent 8,024,668

with the user's Web Browser (computer system at bottom left of Figure 4). Pet. 20; *see also* Ex. 1009 ¶ 119. Petitioner concludes that, as shown in Figures 2 and 4, when the user clicks a "feedback link" on a web page, the feedback link is operable to communicate automatically an HTTP request for the "Make Comment Page" (i.e., the claimed "feedback window") to a remote computer system. Pet. 22; *see also* Ex. 1009 ¶ 122.

Patent Owner disagrees with Petitioner's conclusion that McDonald teaches or suggests a "feedback window" that is communicated to and a "feedback window" received from a "'remote computer system that is separate from a computer system hosting the website." Prelim. Resp. 28, 30-31. According to Patent Owner, McDonald merely discloses ***communication*** with a remote database, such as to submit feedback information. *Id.* at 28. Patent Owner specifically explains that while McDonald's commenting applet, which generates the claimed "feedback window," interacts with a remote database to store comments, "it is clear that the interaction is limited to transfer of comment data—not the applet itself." *Id.* at 15. In other words, according to Patent Owner, McDonald does not disclose that the applet is located on a remote server that is separate from the server hosting the website and the user system.

Petitioner's argument regarding Figure 4 of McDonald (Pet. 19-20) does not explain how McDonald's disclosure (Ex. 1005, 5) teaches or suggests that the "Make Comment Page" (i.e., the claimed "comment window") is located on a remote computer system that is separate from the server that hosts the website and the user computer system, as required by the challenged claims. Thus, we are not persuaded that McDonald discloses communicating a request for a "comment window" to and receiving a

IPR2014-00421
Patent 8,024,668

"comment window" from "a remote computer system that is separate from a computer system hosting the website and also separate from the computer system of the user," as required by independent claims 1 and 11.

Therefore, we conclude Petitioner has not established a reasonable likelihood it would prevail in showing that claims 1 and 11 are anticipated under 35 U.S.C. § 102 by McDonald. For the same reasons, we are not persuaded that Petitioner has esstablished a reasonable likelihood it would prevail in showing anticipation of dependent claims 4, 5, 7, 14, 15, and 17.

### C. Asserted Obviousness of claims 1, 4, 5, 7, 11, 14, 15, and 17 by McDonald in view of Pinsley

Petitioner argues that the combination of McDonald and Pinsley renders each of claims 1, 4, 5, 7, 11, 14, 15, and 17 obvious. Pet. 29-36. We determine Petitioner has demonstrated a reasonable likelihood it would prevail in showing that those claims would have been obvious under 35 U.S.C. § 103 over the combined teachings of McDonald and Pinsley.

### 1. Overview of Pinsley

Pinsley describes methods for conducting surveys of website users. Ex. 1007, Abstract. Pinsley teaches an advertiser website that embeds into certain web page(s) on their website a GIF (graphic image format) icon that links to a recruit program located at a surveyor's site. *Id.* at col. 2, ll. 45-47; col. 3, ll. 9-16. Figure 1 of Pinsley, reproduced below, illustrates the different computer systems used by Pinsley's disclosed methods.

IPR2014-00421
Patent 8,024,668



Figure 1 illustrates the basic elements of the Pinsley survey system.

Pinsley teaches that survey program 9 is located on a computer network (surveyor's website 3) remote from the advertiser's website 1. *Id.* at col. 5, ll. 10-12.

The surveyor site monitors how many times the advertiser's website is accessed by users. Ex. 1007, col. 2, ll. 47-54. A recruit program on the surveyor site selects users of the website to be presented with a banner on the advertiser's website. *Id.* The banner entices the user to participate in a survey about the advertiser's website. *Id.* When a user clicks on the banner, the program launches and presents the user with a survey, as shown in Figure 4 reproduced below. *Id.* at col. 2, ll. 51-56; Fig. 4.

IPR2014-00421
Patent 8,024,668



FIG. 4

Figure 4 illustrates a survey presented to users of an advertiser's website as disclosed in Pinsley's survey system.

After the survey is completed, the information is collected, processed and analyzed by the surveyor, and then the information is delivered to the advertiser or otherwise used. *Id.* at col. 3, ll. 5-8.

*2. Analysis*

We have reviewed Petitioner's arguments that each of claims 1, 4, 5, 7, 11, 14, 15, and 17 would have been rendered obvious by the combined teachings of McDonald and Pinsley, and Petitioner's supporting evidence. Pet. 29-36, 48-60. We are persuaded, based on the current record, that Petitioner has made a sufficient showing that the combination of McDonald and Pinsley teaches or suggests all the limitations of the challenged claims noted above. Patent Owner argues that the combination of McDonald and Pinsley does not teach or suggest several limitations of independent claims 1 and 11. We do not find Patent Owner's arguments persuasive on the present record, as discussed below.

13

IPR2014-00421
Patent 8,024,668

Patent Owner first contends that neither McDonald nor Pinsley teaches nor suggests that a request for the "feedback window" is communicated to and the "feedback window" is received from a "remote computer system separate from a computer system hosting the website and also separate from the computer system of the user," as required by independent claims 1 and 11. Prelim. Resp. 44.

According to Patent Owner, "Pinsley is directed to a survey sampling program that decides whether to display an enticement banner to a user to complete a website survey, but is silent as to where or how the website survey page itself is hosted." *Id.* (citing Ex. 1007 at col. 2, ll. 26-60 and Figure 3). As noted by Petitioner, however, Pinsley specifically discloses that survey program (element 9) is located on a computer network (surveyor's website 3) that is remote from the advertiser's website (element 1) and the user's computer systems (elements 6 and 7). Pet. 31-33 (citing Ex. 1007 at col. 5, ll. 10-12). Moreover, as Petitioner asserts, Pinsley teaches giving users an opportunity to access the survey by presenting a graphic icon to the user, and responding to the graphic icon causes the actual survey (i.e., the claimed "feedback window") to be received from the surveyor's site (i.e., the claimed "remote computer system")." Ex. 1009 ¶ 123; Ex. 1007, col. 2, ll. 11-14.

Patent Owner further contends that neither McDonald nor Pinsley teaches nor suggests the required claim limitation of "page-specific" feedback concerning a particular web page of a website, as required by independent claims 1 and 11. Prelim. Resp. 47. According to Patent Owner, (1) McDonald fails to teach that limitation, because it is directed to peer-review of multimedia files, *not particular web pages of a website*, and

IPR2014-00421
Patent 8,024,668

(2) Petitioner does not assert that Pinsley discloses this limitation, and therefore, Petitioner fails to meet its burden to show obviousness of the independent claims. *Id.* Petitioner, however, asserts that McDonald does teach this limitation. Specifically, Petitioner asserts that McDonald discloses that "[e]ach system allows people to make context-sensitive comments about specific web content. . . .The first system ties comments to *specific web pages*[.]" Pet. 23 (citing Ex. 1005 at 1) (emphasis added). McDonald further states that this "Web Page Commenting" system "interoperates with regular web pages to allow reviewers to comment on web page content." *Id.* (citing Ex. 1005 at 5). We are persuaded, based on the record before us, that McDonald teaches open-ended comments concerning a particular web page.

Patent Owner also contends that neither McDonald nor Pinsley teach, a "feedback window" viewable on a particular web page or the computer system of a user receiving the feedback window from the remote computer. Prelim. Resp. 48. To the contrary, Petitioner asserts McDonald's "feedback link" corresponds to the claimed "feedback icon." Pet. 18. McDonald's system displays a "feedback link" for users to click in order to submit comments regarding a particular web page. Ex. 1005, 5. When a user clicks the "feedback link," a 'make a comment' web form is displayed on the user's computer screen. Ex. 1005, 5; Ex. 1009 ¶ 120. According to Petitioner, McDonald's "make a comment web form" corresponds to the claimed "feedback window." Pet. 19-21. We agree with Petitioner.

Patent Owner lastly contends that neither McDonald nor Pinsley teaches or suggests "reporting [feedback comments] to a website owner," as required by independent claims 1 and 11. Prelim. Resp. 49. Petitioner

IPR2014-00421
Patent 8,024,668

asserts, however, that McDonald teaches reporting user feedback to a website owner, through a Web-based "Report Page." Pet. 24-25 (citing Ex. 1005 at 5, and Fig. 2). Specifically, McDonald states website owners submit search terms through a web form on the Report Query Page to generate custom reports of reviewer comments (Report Pages). These reports display the comments and provide hyperlinks to the Source Page to which the comment refers. Ex. 1005, 5. Based on the cited disclosure in McDonald, we are persuaded that McDonald teaches reporting feedback comments to a website owner.

Accordingly, based on the record before us currently, Petitioner has made a sufficient showing that the combination of McDonald and Pinsley teaches or suggests all the limitations of independent claims 1 and 11. While Patent Owner has not made any arguments specific to the dependent claims, we have reviewed Petitioner's arguments, and supporting evidence, with respect to dependent claims 4, 5, 7, 14, 15, and 17 (Pet. 25-29, 59-60; Ex. 1009 ¶¶ 140-151), and we determine Petitioner has made a sufficient showing that the combination of McDonald and Pinsley teaches or suggests the limitations of those claims as well. For example, dependent claim 4 calls for the media of claim 1, where the feedback window is customizable by the website owner without the website owner modifying the particular web page. McDonald specifically discloses that the "Make a Comment" form is accessed through a "feedback link" on the particular web page (the "source page"), but the form itself is on a different web page (the "Make Comment Page"), which is hosted on a remote server. Pet. 25-26; Ex. 1005, 5, Fig. 2; Ex. 1009 ¶¶ 141-142. According to Petitioner, the website owner need not modify the particular web page in order to customize the comment window.

16

IPR2014-00421
Patent 8,024,668

Pet. 26. So long as the URL of the "Make Comment Page" remains the same, the (unmodified) link on the particular web page will still function to call the (modified) comment window. Ex. 1009 ¶ 142.

Moreover, we are persuaded by Petitioner's analysis, supported by Mr. Chisholm's opinion (Ex. 1009), that one of ordinary skill would have had reason to combine the teachings of McDonald and Pinsley. Pet. 29-31. According to Petitioner, a person of ordinary skill in the art would have looked to both McDonald and Pinsley, because the references address the same problem of soliciting feedback from users of a web page in the same way (by presenting users with a feedback icon that is clicked by the user to open a feedback window). *Id*. at 30. Additionally, we are persuaded by Petitioner's reasoning that a person of ordinary skill in the art would have had reason to modify the products of McDonald with that of Pinsley, because (1) hosting Web-based surveys (*e.g.*, "feedback windows") on a remote server was routine industry practice by 1997-98 (and beyond); (2) remote hosting offered a number of business, technical, and market research advantages, including, *e.g.*, avoiding security issues and other constraints associated with the server hosting the website, and reducing traffic on the website server; and (3) implementing a "feedback window" on a remote computer system was straightforward from a technical perspective, and could be accomplished simply by ensuring that the destination of the corresponding HTML link (appearing on the web page(s) for which feedback was being provided) was set to the address (URL) of the survey on the remote server. *Id*. at 30-31; Ex. 1009 ¶¶ 106-110.

Accordingly, we determine, based on the current record, that Petitioner has established a reasonable likelihood it would prevail in

IPR2014-00421
Patent 8,024,668

showing that claims 1, 4, 5, 7, 11, 14, 15, and 17 would have been obvious, under 35 U.S.C. § 103(a), over the combination of McDonald and Pinsley. Pet. 24-38.

### D. Additional Challenges

Petitioner additionally asserts that claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent are unpatentable under 35 U.S.C. § 103(a) over the combination of McDonald and OpinionLab Website (Pet. 36-46), and under 35 U.S.C. § 103(a) over the combination of Pinsley and OpinionLab Website (Pet. 36-46).

We do not authorize an *inter partes* review on these additional grounds directed to claims 1, 4, 5, 7, 11, 14, 15, and 17, as they are redundant in light of our determination that there is a reasonable likelihood that those challenged claims are unpatentable over the combination of McDonald and Pinsley.


### III.    CONCLUSION

For the foregoing reasons, we determine Petitioner has demonstrated there is a reasonable likelihood it would prevail in establishing the unpatentability of claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent.

At this stage of the proceeding, the Board has not made a final determination as to the patentability of any challenged claim.

IPR2014-00421
Patent 8,024,668

## IV.    ORDER

For the reasons given, it is

ORDERED that, pursuant to 35 U.S.C. § 314(a), an *inter partes* review is hereby instituted as to claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent on the following asserted ground:

1. Claims 1, 4, 5, 7, 11, 14, 15, and 17 under 35 U.S.C. § 103(a) as being rendered obvious over McDonald and Pinsley;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, *inter partes* review of the '668 patent shall commence on the entry date of this Order, and notice is hereby given of the institution of a trial; and

FURTHER ORDERED that no ground other than that specifically provided above is authorized for the *inter partes* review as to claims 1, 4, 5, 7, 11, 14, 15, and 17 of the '668 patent.

IPR2014-00421
Patent 8,024,668

PETITIONER:
Robert Steinberg
Neil A. Rubin
LATHAM & WATKINS LLP
bob.steinberg@lw.com
neil.rubin@lw.com


PATENT OWNER:
Christopher W. Kennerly
Timothy P. Cremen
PAUL HASTINGS LLP
chriskennerly@paulhastings.com
timothycremen@paulhastings.com

Trials@uspto.gov                                             Paper 10
571-272-7822                                    Entered:  July 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
——————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD
——————————

QUALTRICS, LLC,
Petitioner,

v.

OPINIONLAB, INC.,
Patent Owner.
——————————

Case IPR2014-00366
Patent 8,041,805 B2
——————————

Before RAMA G. ELLURU, JEREMY M. PLENZLER, GEORGIANNA W. BRADEN, and CARL M. DEFRANCO, *Administrative Patent Judges*.

DEFRANCO, *Administrative Patent Judge*.

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

# I. INTRODUCTION

Qualtrics, LLC, filed a Petition requesting an *inter partes* review of claims 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 of U.S. Patent No. 8,041,805 B2 ("the '805 patent"). Paper 1 ("Pet."). Patent Owner, OpinionLab, Inc., filed a Preliminary Response. Paper 9 ("Prelim. Resp."). We have jurisdiction under 35 U.S.C. § 314(a), which provides that an *inter partes* review may not be instituted "unless . . . there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

After considering the Petition and Preliminary Response, we determine that Qualtrics has established a reasonable likelihood of prevailing on the claims challenged in the Petition. Accordingly, we institute an *inter partes* review of claims 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 of the '805 patent.

# II. BACKGROUND

A.     *'805 Patent*[1]

The '805 patent is directed to a system and method for reporting user reactions, i.e., feedback, to particular web pages of a website. Ex. 1001, 1:16-19. Typical commercial websites measure a user's reaction to the website *as a whole*. *Id.* at 1:35-56. In contrast, the claimed invention collects and reports user feedback on a *page-specific* basis by incorporating a "user reaction measurement tool" into each web page of the website. *Id*. at 11:59-66. Appearing within a user's browser window is a "viewable icon" that solicits a user's subjective reaction about the particular web page. *Id*. at 11:67–12:6. When the user selects the icon with a mouse pointer, a multi-level rating scale becomes viewable within the browser

---

[1] Qualtrics indicates that the '805 patent is the subject of co-pending cases in the U.S. District Court for the Northern District of Illinois, captioned *OpinionLab, Inc. v. Qualtrics Labs, Inc.*, 1:13-cv-01574; and *OpinionLab, Inc. v. iPerceptions Inc.*, 1:12-cv-05662. Pet. 2.

IPR2014-00366
Patent 8,041,805 B2

window. *Id.* at 12:40-46. The rating scale permits the user to rate his/her subjective reaction to a particular web page by moving the mouse pointer over a desired rating and clicking the mouse button. *Id.* Software associated with the icon operates to collect and store the user's reaction in a database for subsequent reporting to a website owner. *Id.* at 2:6-18. A website owner can generate a report for analyzing user reaction and feedback related to particular web pages of the website. *Id*. at 15:27–21:54, Figs. 8A, 8B, 9. The report allows the website owner to assess the success of each web page in the eyes of the user community. *Id.* at 13:49-52.

B.   *Illustrative Claim*

Of the challenged claims, claims 1, 10, 18, and 26 are independent. Claim 1 is illustrative of the claimed invention and recites:

1.   One or more computer-readable non-transitory storage media embodying software operable when executed to:

provide a user-selectable element viewable on each of a plurality of particular web pages of a website upon initial display of a particular web page and soliciting page-specific user feedback concerning the particular web page upon initial display of the particular web page, the user-selectable element appearing identically and behaving consistently on each of the plurality of particular web pages; and

receive the page-specific user feedback concerning the particular web page for reporting to an interested party, the page-specific user feedback concerning the particular webpages having been provided by a user while the user remained at the particular web page, and the page-specific user feedback comprising one or more page-specific subjective ratings of the particular web page and one or more associated page-specific open-ended comments concerning the particular web page,

the page specific user feedback allowing the interested party to access page-specific subjective ratings and associated page-specific open-ended comments across the plurality of particular web pages to

3

IPR2014-00366
Patent 8,041,805 B2

> identify one or more particular web pages for which the page-specific
> user feedback is notable relative to page-specific user feedback for
> other particular web pages;
>
> wherein the user-selectable element is viewable within a
> browser window upon initial display of the particular web page and
> remains viewable within the browser window, at least prior to the user
> selection, regardless of user scrolling.

Ex. 1001, 25:40–26:3.

Independent claim 10 includes limitations similar to those of claim 1, but recites the user-selectable element in terms of a "first element" and adds the recitation that feedback occurs through a "second element" displayed in response to a user's selection of the first element. *See* Prelim. Resp. 6. Independent claims 18 and 26 recite limitations similar to those of claims 1 and 10, respectively, except they cover a method rather than software. *See* Ex. 1001, 27:41, 28:31.

C.    *Evidence of Record*

Qualtrics relies upon the following prior art as the basis for its assertion against the challenged claims of the '805 patent.[2]

| References | Patents/Printed Publications | Date | Exhibit |
|---|---|---|---|
| CustomerSat | *Customer Satisfaction Measurement, Surveys and Market Research by CustomerSat.com, The Internet Survey Experts*, https://web.archive.org/web/19980526190826/http://www.customersat.com/ (retrieved Nov. 21, 2013 from Internet Archive, Wayback Machine). | May 26, 1998 | 1003 |

---

[2] Qualtrics also proffers the Declaration of John Chisholm, who founded the online survey research company that Qualtrics alleges as having published the CustomerSat reference. Ex. 1005 ¶¶ 13, 27.

IPR2014-00366
Patent 8,041,805 B2

| Medinets | DAVID MEDINETS, PERL5 BY EXAMPLE: THE EASIEST WAY TO LEARN HOW TO PROGRAM, Que Corp. | 1996 | 1004 |
|---|---|---|---|
| HTML Spec | World Wide Web Consortium (W3C), *HTML 4.0 Specification*, Dave Raggett *et al*. (ed.). | Apr. 24, 1998 | 1014 |

D.    *Asserted Grounds of Unpatentability*

Qualtrics asserts the following grounds in challenging the patentability of claims 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 of the '805 patent. Pet. 3.

| Statutory Ground | Basis | Challenged Claims |
|---|---|---|
| § 102 | CustomerSat | 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 |
| § 103 | CustomerSat and Medinets | 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 |
| § 103 | CustomerSat, Medinets, and HTML Spec | 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 |

III.  ANALYSIS

A.    *Claim Construction*

In an *inter partes* review, claim terms are given their broadest reasonable interpretation in light of the specification in which they appear and the understanding of one skilled in the relevant art.  *See* 37 C.F.R. § 42.100(b).  With that standard in mind, we have considered the claim terms that the parties identify for interpretation.[3]  *See* Pet. 6-14; Prelim. Resp. 22-23.  At this stage of the proceeding, we determine that no particular claim terms require an express construction.

---

[3] We note that, for purposes of this proceeding, OpinionLab does not dispute the constructions proposed by Qualtrics.  Prelim. Resp. 23.

5

B.    *Asserted Grounds of Obviousness*

Qualtrics asserts two grounds of obviousness for institution.  First, Qualtrics challenges claims 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 on the basis that the claimed invention would have been obvious over the combined teachings of CustomerSat and Medinets.  Pet. 3, 30-43.  Additionally, Qualtrics challenges the same set of claims on the basis that the claimed invention would have been rendered obvious by the HTML Spec in combination with CustomerSat and Medinets.  *Id*. at 43-45.

1.    *CustomerSat and Medinets*

With respect to Qualtrics's challenge based on CustomerSat and Medinets, we note that Qualtrics relies solely on CustomerSat for teaching the limitation of the user selectable (first) element "remain[ing] viewable in the browser window . . . regardless of user scrolling."  *See* Pet. 42-43.  Qualtrics does not persuade us that CustomerSat teaches this limitation, which is found in each of the independent claims.  Although Qualtrics contends that a skilled artisan would have understood CustomerSat's "Feedback" and "Pop!Up" icons as remaining stationary during user scrolling, Qualtrics's only evidence of such an understanding is the conclusory statement by its declarant that CustomerSat's icon "*could be configured to remain stationary*."  *See* Pet. 40 (citing Ex. 1005 ¶ 195) (emphasis added).  Speculation that something "could be configured" in the manner of the claimed invention, without more, does not amount to a teaching that it "would have been obvious" to do so.  *See* 35 U.S.C. § 103.  Indeed, the declarant's illustration of a "Floating Survey Button" on what appears to be one of CustomerSat's web pages is not supported by the CustomerSat reference of record (i.e., the actual basis of the challenge), which neither shows nor mentions a "floating" survey button.  *Compare* Ex. 1003 at 7 *with* Ex. 1005 ¶ 195.  As such, based on the current record,

6

IPR2014-00366
Patent 8,041,805 B2

Qualtrics does not persuade us that CustomerSat teaches or suggests an icon that "remains viewable . . . regardless of user scrolling." *See, e.g.*, Ex. 1003 at 3, 7. Thus, we deny Qualtrics's challenge that CustomerSat and Medinets would have rendered obvious the claimed invention. *See* Pet. 43-45.

>    2.   *CustomerSat, Medinets, and the HTML Spec*

As for Qualtrics's additional challenge based on the HTML Spec in combination with CustomerSat and Medinets, OpinionLab argues that we should decline institution, because the references fail to teach two "material" limitations found in each of the challenged independent claims. Prelim. Resp. 25-26, 47-53. First, OpinionLab contends that neither CustomerSat nor Medinets, either alone or in combination, teaches receiving page-specific user feedback "while the user remain[s] at the particular web page" being evaluated. *Id.* at 25; *see also id.* at 47-51. According to OpinionLab, in CustomerSat and Medinets, the "user-selectable" or "first" element and "the claimed mechanism for providing user feedback are on entirely ***different*** web pages." *Id.* at 25; *see also id.* at 47 (arguing that Medinets and CustomerSat both disclose entering feedback on a "separate page"). We disagree. Rather, based on the current record, we are persuaded that CustomerSat's Pop!Up icon enables a user to remain "*at* a particular webpage" while entering feedback about that web page in a different window, as required by each of the independent claims. *See* Ex. 1001, 25:53-54 (emphasis added).

For instance, CustomerSat discloses that "By the time you have read this far, a Pop!Up survey invitation should have appeared on your screen. Give it a try!" Ex. 1003 at 7. That the Pop!Up invitation appears on the web page being viewed suggests that the viewer can respond to the survey in the pop-up window while remaining *at* the web page. Indeed, we are persuaded a skilled artisan would have understood CustomerSat's disclosure of a Pop!Up as a smaller window viewable

IPR2014-00366
Patent 8,041,805 B2

within a webpage. *See* Ex. 1005 ¶ 172 ("as a rule, pop-ups were displayed on the web page from which they were launched and were smaller than the page itself (in order to allow the visitor to view the page while responding to the pop-up)"). Medinets and the HTML Spec likewise instruct a skilled artisan on the ability to view a smaller window within a larger window of a webpage. For example, Medinets teaches that "[y]ou can have more than one form per HTML document" (Ex. 1004 at 439), and the HTML Spec teaches "HTML frames" that "offer designers a way to keep certain information visible, while other views are scrolled through or replaced . . . within the same window" (Ex. 1014 at 193). As such, for purposes of institution, we are persuaded that CustomerSat, when combined with Medinets and the HTML Spec, would have rendered obvious the limitation of receiving user feedback while the user "remains at the particular web page" being evaluated. *See* Pet. 38, 43-45.

Second, OpinionLab faults the references as lacking any teaching of the ability to identify a particular web page "for which the page-specific user feedback is notable relative to page-specific user feedback for other particular web pages." *See* Prelim. Resp. 25, 51-53. According to OpinionLab, we should decline institution because, although CustomerSat and Medinets may "in cursory fashion" mention a reporting feature, neither reference teaches "comparing the page-specific feedback across web pages to identify feedback for one particular web page that is notable relative to others." Prelim. Resp. 52; *see also id*. at 27, 39-40. We are not persuaded. Specifically, Medinets's guide to "Perl" software includes a chapter on creating reports that display the data collected from a "Web page" feedback form. Ex. 1004 at 29, 60. As disclosed, the Perl software "stores the feedback information into a database" and allows the webmaster "to track the comments and see which web pages generate the most feedback." Ex. 1004 at 64. Using the Perl

8

IPR2014-00366
Patent 8,041,805 B2

software, the webmaster can create basic reports (*id*. at 29-50) or generate more detail-oriented reports that display various statistics and tables (*id*. at 57-59). *See also* Ex. 1005 ¶ 183. But, although we are persuaded that the Perl software is able to report user feedback on a page-specific basis, we are less convinced of its ability to analyze such feedback "relative to" other webpages, as required by independent claims 1 and 19.

Even so, Medinets notifies webmasters of the existence of alternative software programs for performing further analysis of data resulting from user feedback. *See, e.g.*, Ex. 1004 at 65 ("There is no need for you to create Perl scripts to do all of the analyzing. Some programmers have already done this type of work and many of them have made their programs available on the Web for little or no cost"). Given Medinets's directive that webmasters faced with creating web-page surveys look not only at Perl, but also other software programs for analyzing page-specific feedback, we are persuaded that a skilled artisan would have been led to enhance Medinets's capability of performing page-specific analysis, by seeking to identify how such analysis may be notable relative to other webpages. *See* Pet. 39-40 (citing Ex. 1005 ¶ 192).

In particular, CustomerSat teaches several ways of analyzing survey responses, including "Segmentation," "Cross-tabs," and "Correlations." Ex. 1003 at 7, 25-26, 36; s*ee also* Ex. 1005 ¶¶ 184-186. CustomerSat describes segmentation as "examin[ing] results for subsets of respondents," cross-tabs as "provid[ing] a systematic tabulation and display of results by respondent segment for all choices of all questions of interest," and correlations as "identify[ing] which attributes are potentially the strongest drivers of overall satisfaction [and] which attributes are most strongly correlated with each other." Ex. 1003 at 25-26. CustomerSat further explains that survey "[r]esults may be analyzed . . . by

respondent sub-group or segment; by cross-tabulation" and that "[a]n important analysis is gauging the correlation between each attribute . . . to identify the attributes that most contribute (or detract from) overall customer satisfaction." *Id.* at 18. These teachings by CustomerSat amount to a way of tabbing and analyzing survey response data across web pages and comparing such data from one web page "relative to" other web pages. *See* Ex. 1005 ¶¶ 184-185.

Because CustomerSat and Medinets are similarly concerned with the analysis of website survey responses, and Medinets expressly directs webmasters faced with analysis of user response data to consider other software programs, we are persuaded that a skilled artisan would have been led to combine the teachings of CustomerSat and Medinets to create a report identifying web pages for which user responses are notable "relative to" other webpages. *See* Pet. 39-40 (citing Ex. 1005 ¶ 192). In addition, we find that such a comparison likely would have been a matter of common sense. Thus, based on the current record, Qualtrics has sufficiently demonstrated a reasonable likelihood that the combined teachings of CustomerSat, Medinets, and the HTML Spec satisfy the "reporting" feature of the claimed invention.

We find persuasive Qualtrics's summary (and claim chart) of how the remaining limitations of independent claims 1, 10, 18, and 26 are taught by the combination of CustomerSat, Medinets, and the HTML Spec, and why a skilled artisan would have been led to arrive at the claimed invention. *See* Pet. 30-45, 46-57. For example, Qualtrics asserts that the HTML Spec teaches "HTML frames" for controlling the display of webpage elements during user scrolling. *Id*. at 43-45 (citing Ex. 1014 at 193). OpinionLab does not dispute Qualtrics's reliance on the HTML Spec as evidence of obviousness, except to argue that the HTML Spec does not cure the deficiencies with Qualtrics's reliance on CustomerSat and Medinets.

IPR2014-00366
Patent 8,041,805 B2

*See* Prelim. Resp. 56. Nor does OpinionLab dispute Qualtrics's assertion that a skilled artisan would have had reason to combine the teaching of the HTML Spec with those of CustomerSat and Medinets. *See id.* In any event, the burden remains on Qualtrics. Based on the current record, we are persuaded that the arguments and evidence presented in Qualtrics's petition demonstrate a reasonable likelihood that the combined teachings of CustomerSat, Medinets, and the HTML Spec would have rendered obvious this limitation of claims 1, 10, 18, and 36. *See* Pet. 43-45.

Also, we have considered Qualtrics's challenge of dependent claims 2, 5, 8, 11, 14, 17, 19, 22, 25, 27, 30, and 33. *See* Pet. 40-41, 57-60. OpinionLab does not argue these dependent claims separately from the independent claims, and we are persuaded that Qualtrics has shown sufficiently that their limitations are taught by the combination of CustomerSat, Medinets and the HTML Spec. *See id*.

C.  *Asserted Ground of Anticipation*

We have considered Qualtrics's challenge of the claims on the basis of anticipation by CustomerSat, but find this ground unpersuasive. *See* Pet. 15-30. For example, although CustomerSat describes the reporting capability in terms of analyzing "segments" or "sub-groups" of feedback data, it fails to mention that it can be done on a "page-specific" basis, as required by the claims. *See* Ex. 1003 at 25-26. While such a capability likely would have been obvious (as discussed above), anticipation requires identity. As such, we deny Qualtrics's challenge that CustomerSat anticipates the claimed invention.

## IV.  CONCLUSION

Based on the arguments and evidence presented in the Petition, we conclude that Qualtrics has demonstrated a reasonable likelihood it will prevail in showing obviousness of challenged claims 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 of the '805 patent.

IPR2014-00366
Patent 8,041,805 B2

## V. ORDER

For the foregoing reasons, it is

ORDERED that, pursuant to 35 U.S.C. § 314(a), *inter partes* review of challenged claims 1, 2, 5, 8, 10, 11, 14, 17-19, 22, 25-27, 30, and 33 of the '805 patent is hereby instituted on the asserted ground of obviousness over CustomerSat, Medinets, and the HTML Spec;

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, *inter partes* review of the '805 patent shall commence on the entry date of this Order, and notice is hereby given of the institution of a trial; and

FURTHER ORDERED that all other grounds presented in Qualtrics's Petition are *denied*, and no ground other than that specifically listed above is authorized for *inter partes* review of the '805 patent.

PETITIONER:

Robert Steinberg
Neil A. Rubin
LATHAM & WATKINS LLP
bob.steinberg@lw.com
neil.rubin@lw.com

PATENT OWNER:

Christopher W. Kennerly
Timothy P. Cremen
PAUL HASTINGS LLP
chriskennerly@paulhastings.com
timothycremen@paulhastings.com

# EXHIBIT C

Trials@uspto.gov                                    Paper 17
571-272-7822                              Entered:  July 31, 2014

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

QUALTRICS, LLC,
Petitioner,

v.

OPINIONLAB, INC.,
Patent Owner.
_____

Cases[1]
IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)
_____

Before RAMA G. ELLURU, JEREMY M. PLENZLER, GEORGIANNA
W. BRADEN, and CARL M. DEFRANCO, *Administrative Patent Judges.*

DEFRANCO, *Administrative Patent Judge*.

SCHEDULING ORDER

_____

[1] This order applies to each of the five listed cases.  We exercise our
discretion to issue one order to be docketed in each case.  The parties,
however, are not authorized to use this caption for any subsequent papers.

IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)

A.     INITIAL CONFERENCE CALL

       This order sets a date for the initial conference call.  *See* Appendix.
The parties are directed to the *Office Patent Trial Practice Guide*, 77 Fed.
Reg. 48,756, 48,765-66 (Aug. 14, 2012) for guidance in preparing for the
initial conference call, and should be prepared to discuss any proposed
changes to this Scheduling Order and any motions the parties anticipate
filing during the trial.

B.     DUE DATES

       This order sets due dates for the parties to take action in this trial.  *See*
Appendix.  The parties may stipulate to different dates for DUE DATES 1
through 5 (earlier or later, but no later than DUE DATE 6).  A notice of any
stipulation, specifically identifying the changed due dates, must be promptly
filed.  The parties may not stipulate to an extension of DUE DATES 6 and 7.

       In stipulating to different times, the parties should consider the effect
of the stipulation on times to object to evidence (37 C.F.R. § 42.64(b)(1)), to
supplement evidence (37 C.F.R. § 42.64(b)(2)), to conduct cross-
examination (37 C.F.R. § 42.53(d)(2)), and to draft papers depending on the
evidence and cross-examination testimony (*see* section C).

       The parties are reminded that the Testimony Guidelines appended to
the *Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756, 48,768 (Aug.
14, 2012) (Appendix D), apply to this trial.  The Board may impose an
appropriate sanction for failure to adhere to the Testimony Guidelines.
37 C.F.R. § 42.12.  For example, reasonable expenses and attorneys' fees

IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)

incurred by any party may be levied on a person who impedes, delays, or frustrates the fair examination of a witness.

1. DUE DATE 1

The patent owner may file—

a. A response to the petition (37 C.F.R. § 42.120), and

b. A motion to amend the patent (37 C.F.R. § 42.121).

The patent owner must file any such response or motion to amend by DUE DATE 1. If the patent owner elects not to file anything, the patent owner must arrange a conference call with the parties and the Board. The patent owner is cautioned that any arguments for patentability not raised and fully briefed in the response will be deemed waived.

2. DUE DATE 2

The petitioner must file any reply to the patent owner's response and opposition to the motion to amend by DUE DATE 2.

3. DUE DATE 3

The patent owner must file any reply to the petitioner's opposition to patent owner's motion to amend by DUE DATE 3.

4. DUE DATE 4

a. Each party must file any motion for an observation on the cross-examination testimony of a reply witness (*see* section D) by DUE DATE 4.

IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)

b. Each party must file any motion to exclude evidence (37 C.F.R § 42.64(c)) and any request for oral argument (37 C.F.R. § 42.70(a)) by DUE DATE 4.

5. DUE DATE 5

a. Each party must file any response to an observation on cross-examination testimony by DUE DATE 5.

b. Each party must file any opposition to a motion to exclude evidence by DUE DATE 5.

6. DUE DATE 6

Each party must file any reply for a motion to exclude evidence by DUE DATE 6.

7. DUE DATE 7

Oral argument (if requested by either party) is set for DUE DATE 7.

C. CROSS-EXAMINATION

Except as the parties might otherwise agree, for each due date—

1. Cross-examination begins after any supplemental evidence is due. 37 C.F.R. § 42.53(d)(2).

2. Cross-examination ends no later than a week before the filing date for any paper in which the cross-examination testimony is expected to be used. *Id*.

IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)

## D.  MOTION FOR OBSERVATION ON CROSS-EXAMINATION

A motion for observation on cross-examination provides the parties with a mechanism to draw the Board's attention to relevant cross-examination testimony of a reply witness, since no further substantive paper is permitted after the reply.  *See Office Patent Trial Practice Guide*, 77 Fed. Reg. 48,756, 48,768 (Aug. 14, 2012).  The observation must be a concise statement of the relevance of precisely identified testimony to a precisely identified argument or portion of an exhibit.  Each observation should not exceed a single, short paragraph.  The opposing party may respond to the observation.  Any response must be equally concise and specific.

IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)

## APPENDIX

INITIAL CONFERENCE CALL……………August 25, 2014, 1:00 pm ET

DUE DATE 1……………………………………….......October 31, 2014

    Patent owner's response to the petition

    Patent owner's motion to amend the patent

DUE DATE 2……………………………………….........January 9, 2015

    Petitioner's reply to patent owner's response to the petition

    Petitioner's opposition to motion to amend

DUE DATE 3……………………………...…………February 6, 2015

    Patent owner's reply to petitioner's opposition to motion to amend

DUE DATE 4……………………………….……….....February 27, 2015

    Motion for observation regarding cross-examination of reply witness

    Motion to exclude evidence

    Request for oral argument

DUE DATE 5……………………………...………….. March 13, 2015

    Response to observation

    Opposition to motion to exclude

DUE DATE 6………………………………….……... March 20, 2015

    Reply to opposition to motion to exclude

DUE DATE 7………………………………….……....April 2, 2015

    Oral argument (if requested)

IPR2014-00356 (Patent 6,606,581 B1)
IPR2014-00366 (Patent 8,041,805 B2)
IPR2014-00406 (Patent 7,085,820 B1)
IPR2014-00420 (Patent 7,370,285 B1)
IPR2014-00421 (Patent 8,024,668 B2)


PETITIONER:

Robert Steinberg
Neil A. Rubin
LATHAM & WATKINS LLP
bob.steinberg@lw.com
neil.rubin@lw.com


PATENT OWNER:

Christopher W. Kennerly
Timothy P. Cremen
PAUL HASTINGS LLP
chriskennerly@paulhastings.com
timothycremen@paulhastings.com